Filed 9/27/13; pub. order 10/28/13 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| JUDY GOLDMAN, etc., | |
| Plaintiff and Respondent, | C069970 |
| v. | (Super. Ct. No. 34201100104195CUPOGDS) |
| SUNBRIDGE HEALTHCARE, LLC et al., | |
| Defendants and Appellants. | |

On behalf of her decedent husband Edward Goldman, Judy Goldman sued for alleged neglect by the operators of two skilled nursing facilities: Carmichael Care and Rehabilitation Center (Carmichael Care) and Rosewood Terrace Care and Rehabilitation (Rosewood Terrace).[1] In the same complaint, Judy also sued all defendants in her individual capacity for negligent infliction of emotional distress and wrongful death.

---

[1] Due to shared surname, we refer to the Goldmans by their first names.

The first set of defendants relates to Edward's stay at Carmichael Care and consists of SunBridge Healthcare, LLC (formerly known as SunBridge Healthcare Corporation), Regency Health Services, Inc., Sun Healthcare Group, Inc., and SunBridge Carmichael Rehabilitation Center (doing business as Carmichael Care and Rehabilitation Center).

1

Carmichael Care and Rosewood Terrace each sought to compel arbitration based on documents Judy signed when Edward was admitted to each of the facilities.**2** Plaintiff opposed the petition and motion, and the trial court refused to compel arbitration. The trial court found Judy did not have authority to sign on Edward's behalf, and she did not sign in her individual capacity. The trial court also exercised its discretion under Code of Civil Procedure section 1281.2, subdivision (c), to adjudicate the arbitrable and nonarbitrable claims in order to avoid the possibility of inconsistent rulings.**3**

Carmichael Care and Rosewood Terrace appeal from the orders refusing to compel arbitration and present nearly identical arguments. Defendants contend (1) Judy had authority to sign the admissions papers containing the arbitration agreements because Edward was unable to sign for himself, (2) Judy signed not only on Edward's behalf, but also for herself when she agreed to arbitration, (3) public policy compels enforcement of the arbitration agreements in this case, (4) the arbitration agreements are not void for being oppressive or unconscionable, and (5) the trial court was precluded from exercising

---

The second set of defendants relates to Edward's two stays at Rosewood Terrace and consists of Carmichael Care, Inc. (doing business as Rosewood Terrace Care and Rehabilitation), North American Health Care, Inc., and John Sorensen.

**2**      Carmichael Care filed a "petition" to compel arbitration and Rosewood Terrace filed a "motion" to compel arbitration. The parties assert no legal difference in the names of the procedural vehicles chosen by the two sets of defendants. Even though Code of Civil Procedure section 1294, subdivision (a), renders appealable "[a]n order dismissing or denying a petition to compel arbitration," in this context "petition" and "motion" have been treated as interchangeable. For example, one court recently stated that "Code of Civil Procedure section 1294, subdivision (a), makes an order denying a *petition* to compel arbitration appealable, an order granting a *motion* to compel arbitration is not appealable." (*Kinecta Alternative Financial Solutions, Inc. v. Superior Court* (2012) 205 Cal.App.4th 506, 513, italics added.)

**3**      Code of Civil Procedure section 1281.2, subdivision (c), provides that "[i]f the court determines that a party to the arbitration is also a party to litigation in a pending court action or special proceeding with a third party," the trial court "(1) may refuse to enforce the arbitration agreement and may order intervention or joinder of all parties in a single action or special proceeding."

2

jurisdiction over the arbitrable claims pursuant to Code of Civil Procedure section 1281, subdivision (c), because that section is preempted by the Federal Arbitration Act (9 U.S.C. § 1 et seq.).[4]

We conclude Judy did not have authority to sign the arbitration agreements on Edward's behalf and did not sign the agreements in her individual capacity. We reject the contention that public policy requires plaintiffs to arbitrate their claims in the absence of the existence of a valid arbitration agreement. Accordingly, we affirm the trial court's orders denying Carmichael Care's petition and Rosewood Terrace's motion to compel arbitration.

BACKGROUND

*The Complaint*

In May 2011, Edward –- by and through his successor, Judy –- filed a complaint setting forth causes of action for elder abuse, fraud, and violations of the Patients Bill of Rights (Health & Saf. Code, § 1430, subd. (b); Cal. Code Regs., tit. 22, § 72527).

The complaint alleged Edward was 61 years old on February 25, 2010, when he was admitted to Carmichael Care, a skilled nursing facility. Edward was transferred to Carmichael Care after a short stay at the Veterans Administration (VA) Medical Center where he had been treated for gastrointestinal bleeding. Although Edward suffered a stroke in 2008 that left him weak on his left side, he had been living independently at home with Judy. Over the course of four months at Carmichael Care, Edward sustained six falls –- several of which were undocumented by the facility's staff. On the sixth fall, Edward fractured his left hip. The facility staff did not document the fall or immediately respond to Judy's requests to have x-rays taken of Edward's hip. Three days after the

---

[4]     Carmichael Care's recitation of the procedural history of this case in its opening brief asserts the trial court "refused to provide a statement of decision." However, Carmichael Care does not develop any argument on the point. Accordingly, we decline to address this issue. (*In re S.C*. (2006) 138 Cal.App.4th 396, 408.)

fall, an x-ray was taken and Edward was rushed to the emergency room. On June 28, 2010, Edward's hip was surgically repaired at Mercy San Juan hospital.

The complaint further alleged Edward was admitted on July 1, 2010, to Rosewood Terrace, another skilled nursing facility. At Rosewood Terrace, Edward needed the assistance of two staff members for any transfers. On July 6, 2010, he experienced a popping sensation when he was transferred by a nursing assistant. Subsequent x-rays showed Edward's hip to be dislocated. Edward returned to Mercy San Juan hospital for two weeks for further care of his hip. He was again admitted to Rosewood Terrace on July 20, 2010. The next day, Edward was due to have the staples removed from his hip repair. However, the staples were not removed. Ten days later, Edward complained of pain in his hip. On July 31, 2010, facility notes recorded he was coughing and wheezing. On August 5, 2010, nursing notes indicated his hip dressing was soaked with blood and the staples still had not been removed. The suture line was swollen and draining necrotic debris. The next day, Judy took Edward out of Rosewood Terrace and drove him to the emergency room at the VA Medical Center. Edward died on August 17, 2010.

In addition to appearing as Edward's successor, Judy also sued on her own behalf to assert causes of action for negligent infliction of emotional distress and wrongful death.

### Carmichael Care's Petition to Compel Arbitration

In July 2011, Carmichael Care petitioned to compel arbitration and introduced copies of the arbitration agreements signed by Judy. Carmichael Care also introduced a copy of Edward's VA advance directive: Durable Power of Attorney for Health Care and Living Will (VA advance directive), which included a durable power of attorney appointing Judy as his healthcare agent in the event he became unable to make decisions for himself. In pertinent part, Edward's VA advance directive stated: "I appoint the person named below to make decisions about my health care if there ever comes [a] time when I cannot make those decisions." Judy was listed as the person to be appointed in

4

such a circumstance.  The VA advance directive was signed by Edward and witnessed on February 9, 2010.

Plaintiff opposed the petition and introduced a declaration by Judy that Edward was capable of and actually did make healthcare decisions for himself before and during his stay at Carmichael Care.  Judy's declaration further stated:  "As to the signing of the arbitration agreement, a person from the facility merely told me that I needed to sign some more forms for my husband.  The person from the facility did not say what the forms were, that they involved arbitration, or that there was a choice in the signing of the documents.  The person from the facility never inquired of me whether my husband was capable of signing the documents or discussed with me that the documents needed to be signed by my husband if he was capable.  Had this issue been raised, I certainly would have told the facility employee that my husband was capable of making his own health care decisions."

In reply, Carmichael Care submitted a form titled "Authorizations, Acknowledgments and Consents" signed and initialed multiple times by Judy.  The form had a blank line following text stating, "If Resident is unable to sign this form, please state the reason."  On this line, Judy wrote "Stroke."

### *Rosewood Terrace's Motion to Compel Arbitration*

In September 2011, Rosewood Terrace filed a motion to compel arbitration and introduced arbitration agreements signed by Judy.

Plaintiff opposed Rosewood Terrace's motion and submitted a declaration by Judy that stated Edward was capable of and actually did make healthcare decisions for himself before and during his stays at Rosewood Terrace.  Mirroring her earlier declaration, Judy's declaration in opposition to the Rosewood Terrace motion stated:  "As to the signing of the arbitration agreement, a person from the facility merely told me that I needed to sign some admission forms for my husband.  The person from the facility did not say what the forms were, that they involved arbitration, or that there was a choice in

5

the signing of the documents. The person from the facility never inquired of me whether my husband was capable of signing the documents or discussed with me that the documents needed to be signed by my husband if he was capable. Had this issue been raised, I certainly would have told the facility employee that my husband was capable of making his own health care decisions."

### *Orders Denying the Petition and Motion to Compel Arbitration*

The trial court refused to order plaintiff to arbitrate her claims. As to Carmichael Care, the trial court found that Judy signed two arbitration agreements on Edward's behalf when he was admitted to that facility. At the same time she signed the arbitration agreements, Judy also signed a document noting she was signing on Edward's behalf due to "Stroke." However, the trial court found Carmichael Care "presented no evidence that such a determination was ever made by Edward Goldman's primary care physician." The court noted that a doctor's report for Edward made the day after Judy signed the Carmichael Care arbitration agreement "showed [Edward] communicated to the doctor in a manner inconsistent with a person who was too ill to make health care decisions." As a result, the trial court found the Carmichael Care defendants "have failed to meet their burden to establish that the VA Advance Directive was in effect, and thus, that Judith Goldman was authorized to execute the arbitration agreements on Edward's behalf." In so concluding, the court stated the Carmichael Care defendants "submit a document signed by Judith Goldman on the date the arbitration agreements were signed stating that she was signing the agreement on Edward's behalf due to 'stroke.' The court finds this insufficient to establish that the VA Advance Directive was in effect."

As to Rosewood Terrace, the trial court concluded there was no evidence showing Edward's primary care physician ever made a determination Edward lacked capacity to make his own healthcare decisions. Instead, the court noted plaintiff had "submitted a doctor's report indicating that at the time Edward Goldman was admitted to Rosewood, he was 'awake' and 'alert,' and communicated to the doctor in a manner inconsistent

with a person who was too ill to make health care decisions. [Citation.] Defendants have failed to meet their burden to establish that the Advance Health Care Directive was in effect, and thus, that Judith Goldman was authorized to execute the arbitration agreements on Edward's behalf."

Finally, the trial court stated that "even if there were a valid agreement to arbitrate, the court would exercise its discretion under [Code of Civil Procedure section] 1281.2. The Court is also denying [Carmichael Care's] petition to arbitrate, and the claims against the remaining defendant North American Health Care, Inc., are not subject to arbitration. Plaintiff's claims under the Patient's Bill of Rights are not subject to arbitration pursuant to the terms of the Arbitration Agreement."

Carmichael Care and Rosewood Terrace each timely filed a notice of appeal from the orders denying the petition and motion to compel arbitration. (Code Civ. Proc., § 1294, subd. (a).)

DISCUSSION

I

***Authority to Agree to Arbitration on Behalf of a Spouse***

Carmichael Care and Rosewood Terrace contend Judy had authority to sign the arbitration agreements on Edward's behalf. We are not persuaded.

**A.**

***Agreements to Arbitrate Future Disputes***

California courts "have consistently found a strong public policy favoring arbitration agreements." (*Coon v. Nicola* (1993) 17 Cal.App.4th 1225, 1232.) "Although '[t]he law favors contracts for arbitration of disputes between parties' (*Player v. Geo. M. Brewster & Son, Inc.* [(1971)] 18 Cal.App.3d [526,] 534), ' "there is no policy compelling persons to accept arbitration of controversies which they have not agreed to arbitrate . . . ." ' (*Weeks v. Crow* (1980) 113 Cal.App.3d 350, 353, quoting *Freeman v. State Farm Mut. Auto. Ins. Co.* [(1975)] 14 Cal.3d [473,] 481.)" (*Victoria v. Superior*

7

*Court* (1985) 40 Cal.3d 734, 744.) "The party seeking to compel arbitration bears the burden of proving the existence of a valid arbitration agreement. (*Garrison v. Superior Court* (2005) 132 Cal.App.4th 253, 263 (*Garrison*); *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972; *Pagarigan v. Libby Care Center, Inc.* (2002) 99 Cal.App.4th 298, 301 (*Pagarigan*).) Petitions to compel arbitration are resolved by a summary procedure that allows the parties to submit declarations and other documentary testimony and, at the trial court's discretion, to provide oral testimony. (*Engalla, supra*, 15 Cal.4th at p. 972; Code Civ. Proc., §§ 1281.2, 1290.2.) If the facts are undisputed, on appeal we independently review the case to determine whether a valid arbitration agreement exists. (*Garrison, supra*, 132 Cal.App.4th at p. 263; *Buckner v. Tamarin* (2002) 98 Cal.App.4th 140, 142.)" (*Flores v. Evergreen at San Diego, LLC* (2007) 148 Cal.App.4th 581, 586 (*Flores*).)

As the *Flores* court explained, "Generally, a person who is not a party to an arbitration agreement is not bound by it. (*Buckner v. Tamarin, supra*, 98 Cal.App.4th at p. 142.) However, there are exceptions. For example, a *patient* who signs an arbitration agreement at a health care facility can bind relatives who present claims arising from the patient's treatment. (*Mormile v. Sinclair* (1994) 21 Cal.App.4th 1508, 1511–1516; *Bolanos v. Khalatian* (1991) 231 Cal.App.3d 1586, 1591.) Further, a person who is authorized to act as the patient's agent can bind the patient to an arbitration agreement. (*Garrison, supra*, 132 Cal.App.4th at pp. 264–266; see *Buckner, supra*, 98 Cal.App.4th at p. 142.)" (*Flores*, *supra*, 148 Cal.App.4th at p. 587, fn. omitted.)

**B.**

### *Whether Edward Agreed to Arbitration at Carmichael Care and Rosewood Terrace*

The record in this case shows that approximately three weeks before his admission to Carmichael Care, Edward executed a VA advance directive, which conferred Judy with authority to make decisions on his behalf only if he became unable to do so for himself. Under the plain language of the VA advance directive, Edward agreed to give

8

Judy authority to make healthcare decisions on his behalf only "if there ever comes [a] time when I cannot make those decisions." Plaintiff introduced evidence that Edward was lucid and mentally capable at the time of his admission to Carmichael Care. Plaintiff also introduced evidence that Edward was alert and oriented at the time of his admission to Rosewood Terrace. During his time at Carmichael Care and Rosewood Terrace, Edward made numerous healthcare decisions for himself. Also, on July 1 (the day he was admitted to Rosewood Terrace) and July 20 (while at Rosewood Terrace), Edward signed a physician order for life-sustaining treatment (POLST) form.

As counsel for Carmichael Care acknowledged at oral argument, there is no evidence Edward's primary care physician ever declared Edward to lack capacity to make his own decisions. Probate Code section 4658 requires a determination by a primary physician in order to establish a lack of capacity by providing: "Unless otherwise specified in a written advance health care directive, for the purposes of this division, a determination that a patient lacks or has recovered capacity, or that another condition exists that affects an individual health care instruction or the authority of an agent or surrogate, shall be made by the primary physician." A determination of incapacity cannot be tacit because Probate Code section 4732 provides that "[a] primary physician who makes or is informed of a determination that a patient lacks or has recovered capacity" is required to "promptly record the determination in the patient's health care record and communicate the determination to the patient, if possible, and to a person then authorized to make health care decisions for the patient."

Carmichael Care and Rosewood Terrace do not contend the VA advance directive expired or that Edward lost capacity to make his own decisions about whether to enter into an arbitration agreement at the time he was admitted to its facility. Indeed, both acknowledge Edward "could make decisions, for example decisions about such things as his own health care." And, Carmichael Care and Rosewood Terrace do not identify any document or verbal expression of Edward by which he gave Judy authority to sign an

9

arbitration agreement on his behalf. Consequently, we agree with the trial court that Carmichael Care and Rosewood Terrace failed to meet their burden of proving the existence of a valid agreement in which Edward, or someone with valid authority to bind him, agreed to arbitrate any disputes.

Carmichael Care and Rosewood Terrace assert that even though Edward had capacity to make his own decisions, someone had to sign documents for him because he could not do so himself. In the trial court, none of the defendants offered evidence or even made an offer of proof regarding Edward's inability to sign documents when admitted to their care. Consequently, the contention has not been preserved for review. (*Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 282.)

Carmichael Care asserts Judy's mere status as Edward's wife gave her authority to sign the arbitration agreements on his behalf, "[o]therwise, the married couple would have to go through the formality of creating a formal agency relationship, just to sign the various long-term care documents." Rosewood Terrace echoes the assertion. A nearly identical contention was rejected in *Flores*, *supra*, 148 Cal.App.4th at page 589. *Flores* involved a husband, Luis, who signed an arbitration agreement on behalf of his wife, Josephina, at the time of her admission to Evergreen at San Diego, a skilled nursing facility. (*Id.* at p. 584) In the admission agreement, "Luis signed a line designated '[a]gent'; on other admission documents he signed lines variously designated '[l]egal [r]epresentative' or '[r]esponsible [p]arty.'" (*Id.* at pp. 584-585.) However, no evidence established that Josephina conferred him with authority to bind her to the arbitration agreement. (*Id.* at p. 589.) When Josephina and Luis sued Evergreen, the facility moved to compel arbitration. (*Id.* at pp. 585-586.) The trial court denied the motion and the Court of Appeal affirmed on grounds that no conduct by the principal, Josephina, conferred Luis with authority as an agent to bind her to arbitration. (*Id.* at pp. 587-589.)

The *Flores* court also rejected the argument that Luis's status as Josephina's spouse inherently gave him authority to execute an arbitration agreement on her behalf.

10

*Flores* explained, "Although we agree that spouses are fiduciaries and owe a duty of support in the family law context, these duties do not create a power to contractually bind each other in the agency context. '[I]t is well established that an agency cannot be implied from the marriage relation alone.' (*Lovetro v. Steers* [(1965)] 234 Cal.App.2d [461,] 475; *Russell v. Dopp* (1995) 36 Cal.App.4th 765, 783; *Avedissian v. Manukian* (1983) 141 Cal.App.3d 379, 385.) We recognize that 'it is also true that much less evidence is required to establish a principal and agent relationship between husband and wife than between nonspouses.' (*Lovetro, supra*, at p. 475.) Here, however, Evergreen presented no evidence of agency apart from the marital relationship. Although the establishment of an agency relationship between spouses does not require a high level of proof, the Floreses' marital relationship cannot alone create an agency." (*Flores, supra*, 148 Cal.App.4th at p. 589.)

The present action presents an even stronger case than in *Flores* for rejecting marital status as sufficient to confer agency because Edward's VA advance directive expressly reserved the right to make his own decisions until and unless he became incapacitated. (See *Flores, supra*, 148 Cal.App.4th at pp. 584, 589.) For this reason, we also reject the suggestion at oral argument by counsel for Carmichael Care, that the "close relationship" between Judy and Edward gave her authority to sign for him. We decline to carve from *Flores's* holding an exception for marriages deemed to be especially "close." Even apart from the difficulty in formulating such a test, the *status* of marriage cannot not substitute for the *act* of conferring agency to a spouse. (*Id.* at p. 589; *Russell v. Dopp*, *supra*, 36 Cal.App.4th at p. 783.)

The *Flores* court affirmed even though Evergreen introduced a power of attorney executed by Josephina in Luis's favor *after* her admission to the facility. (*Flores, supra*, 148 Cal.App.4th at pp. 588-589.) As *Flores* noted, "no facts were presented suggesting that by signing the power of attorney form Josephina intended to ratify Luis's earlier agreement to the arbitration." (*Ibid.*) For the same reason, we reject Carmichael Care's

11

and Rosewood Terrace's assertion that "[g]iven their marital relationship, given the situation which required that he receive long-term care, and given that he was 'alert,' 'oriented,' and 'capable,' the only reasonable inference to draw is that [Edward] was or soon would be aware of what she had done." Here, as in *Flores*, there was no evidence Edward ratified Judy's signing of the arbitration agreements. (*Flores, supra*, 148 Cal.App.4th at pp. 588-589.) Thus, we also reject Rosewood Terrace's contention that Judy "signed for [Edward], just as most people in the situation sign for their spouses, and there is no evidence that he ever objected to her doing so." Edward did not need to object in order to preserve his right to make his own healthcare decisions. (*Ibid.*)

Rosewood Terrace contends that for Judy "to have actual authority to sign the agreements on [Edward's] behalf, it was not needed for [Edward] to literally state 'I now declare my wife, Judith Goldman, as my agent,' or anything to that effect." While no talismanic language is necessary for a principal to confer authority to an agent, *some* expression of the delegation is necessary. (*Flores, supra*, 148 Cal.App.4th at p. 589.) For this reason, we reject Rosewood Terrace's suggestion that Edward's silence on the matter be considered to be an adoptive admission of the arbitration agreements signed by Judy. Moreover, it was not plaintiff's burden to show Judy did not have authority to sign on behalf of her husband. It was defendants' burden to establish that either Edward himself, or Judy with authority, agreed to arbitration. (*Garrison v. Superior Court* (2005) 132 Cal.App.4th 253, 263.)

Both Carmichael Care and Rosewood Terrace focus on Judy's conduct and statements in signing the arbitration agreements. For example, they point to the fact she signed as Edward's "representative" and indicated she was signing due to his "Stroke."[5] We disagree because "agency cannot be created by the conduct of the agent alone; rather,

---

[5] As noted in our recitation of the factual and procedural history of this case, Edward's stroke occurred in 2008 –- after which he lived independently at home with Judy and executed what defendants do not dispute was a valid VA advance directive.

12

*conduct by the principal* is essential to create the agency. Agency 'can be established either by agreement between the agent and the principal, that is, a true agency [citation], or it can be founded on ostensible authority, that is, some intentional conduct or neglect on the part of the alleged principal creating a belief in the minds of third persons that an agency exists, and a reasonable reliance thereon by such third persons.' (*Lovetro v. Steers* (1965) 234 Cal.App.2d 461, 474–475; see Civ. Code, §§ 2298, 2300.) ' " 'The principal must in some manner indicate that the agent is to act for him [or her], and the agent must act or agree to act on his [or her] behalf and subject to his [or her] control.'. . ." [Citations.]' Thus, the 'formation of an agency relationship is a bilateral matter. Words or conduct *by both principal and agent* are necessary to create the relationship . . . .' (*van't Rood* [*v. County of Santa Clara* (2003)] 113 Cal.App.4th [549,] 571, italics added.)" (*Flores*, *supra*, at pp. 587-588.)

Here, defendants did not introduce any evidence that Edward –- by words or actions -– agreed to have Judy sign arbitration agreements or make healthcare decisions for him while he was capable of making them for himself. Thus, defendants failed to meet their burden of proof to establish Edward agreed to arbitration of any legal disputes. (*Garrison, supra,* 132 Cal.App.4th at p. 263.)

In an argument made by Carmichael Care, and repeated by Rosewood Terrace, defendants contend Judy did not need authority as Edward's agent to sign the arbitration agreement because the California Arbitration Act (Code Civ. Proc., § 1280 et seq.) uses the word "representative" in section 1280, subdivision (a), where it defines "Agreement" to include "agreements providing for valuations, appraisals and similar proceedings and agreements between employers and employees or between their respective *representatives*." (Italics added.) The argument remains largely undeveloped by both sets of defendants. We are not persuaded that the use of "representative" in section 1280 undermines the analysis of principal and agent authority as they relate to a married couple in which one spouse signs on another's behalf. (See generally *Flores*, *supra*, 148

13

Cal.App.4th at pp. 587-589; *Ruiz v. Podolsky* (2010) 50 Cal.4th 838, 853; *Garrison*, *supra*, 132 Cal.App.4th at p. 264; *Hogan v. Country Villa Health Services* (2007) 148 Cal.App.4th 259, 263-266.)  Consequently, we reject the assertion that labeling Judy as Edward's "representative" somehow conferred her with decision-making authority he expressly retained for himself.

In sum, neither Carmichael Care nor Rosewood Terrace met its burden to establish Judy had authority to agree to arbitration on Edward's behalf.

## II

### *Whether Judy Signed on her own Behalf*

Carmichael Care and Rosewood Terrace contend Judy "acknowledged when she signed the arbitration agreements that she agreed to arbitrate her own claims arising from the care that she was requesting on [Edward's] behalf."  We disagree.

### A.

### *The Carmichael Care Arbitration Documents*

In pertinent part, the arbitration agreement signed by Judy at the time of Edward's admission at Carmichael Care provides:  "This agreement, made on **3/24/10** (date) by and between the parties, Resident **Goldman, Edward** and Resident's Legal Representative _____ (collectively referred to hereinafter as 'Resident'), and the Facility **Carmichael Care Center**, is an Agreement intended to require that Disputes (the scope of which is described in section 'B') be resolved by arbitration.  The Resident's Legal Representative agrees that he or she is executing this agreement as a party, both in his or her representative and individual capacity."  (Bold text indicates handwritten interlineations.)

Elsewhere in the agreement, Judy indicated she accepted the agreement with her "Initial of Resident/Legal Representative."  At the end of the seven-page agreement, Judy signed on a line indicating, "Signature of Resident's Legal Representative in his/her Individual and Representative Capacity."

14

Judy also signed a medical practice arbitration agreement that provided in pertinent part: "This agreement, made on **3/24/10** (date) by and between the parties, Resident **Goldman Edward** and Resident's Legal Representative _____ (collectively referred to hereinafter as 'Resident'), and the Facility **Carmichael C. Center**, is an Agreement intended to require that Disputes (the scope of which is described in section 'B') be resolved by arbitration. The Resident's Legal Representative agrees that he or she is executing this agreement as a party, both in his or her representative and individual capacity." (Bold text indicates handwritten interlineations.) For this agreement, Judy signed on the line labeled, "Initial of Resident/Legal Representative." At the end of the seven-page agreement, Judy signed on a line indicating, "Signature of Resident's Legal Representative in his/her Individual and Representative Capacity."

**B.**

*The Rosewood Terrace Arbitration Documents*

In support of its motion to compel arbitration, Rosewood Terrace introduced a document titled, "Arbitration of Medical Malpractice Disputes," which stated in pertinent part: "By signing this arbitration agreement below, Resident agrees to be bound by the forgoing arbitration provisions. [¶] . . . [¶] This arbitration agreement shall bind the parties hereto, including the heirs, representatives, executors, administrators, successors, and assigns of such parties." The signature line labeled, "Resident" is blank. Edward's name does not appear anywhere on the form. Instead, Judy signed only on the line labeled, "Responsible Party."

Edward's name also does not appear anywhere on the form titled, "Arbitration of Other Disputes," which provided that "Resident and the Facility further agree that any dispute arising between them from torts, contracts or otherwise, including any claims for punitive damages and any actions brought on behalf of the Resident by third-parties, but exception [*sic*] claims pertaining to the amount of the Facility's charges, shall be submitted upon request of either the Resident or the Facility to arbitration as provided by

15

California law." The signature line for "Resident" is blank. Judy's signature appears on the line labeled, "Responsible Party (if any)."

On the same day as she signed admissions forms for Edward's admission to Rosewood Terrace, Judy also signed an advisement stating, "Your Rights as a Resident." Judy signed on a line simply marked, "Signature."

## C.

### *Judy was not a Party to the Arbitration Agreements*

It is well settled that "[t]he strong public policy in favor of arbitration does not extend to those who are not parties to an arbitration agreement, and a party cannot be compelled to arbitrate a dispute that he [or she] has not agreed to resolve by arbitration. (*County of Contra Costa v. Kaiser Foundation Health Plan, Inc.* (1996) 47 Cal.App.4th 237, 245.)" (*Benasra v. Marciano* (2001) 92 Cal.App.4th 987, 990.)

### *1. Carmichael Care Arbitration Agreements*

Judy was not a party to the Carmichael Care arbitration agreement. Clearly, she was not a "resident" of the facility. And, our conclusion that Judy did not have authority to sign the arbitration agreements on behalf of Edward means she was not his "[l]egal [r]epresentative" as described in Carmichael Care's arbitration agreement. Moreover, Carmichael Care did not include Judy's name on the blank line provided to name the resident's legal representative.

Nonetheless, Carmichael Care asserts Judy herself was bound by the arbitration agreements because the arbitration agreement provided that "Resident's Legal Representative agrees that he or she is executing this agreement as a party, both in his or her representative *and individual capacity*." (Italics added.) Carmichael Care points to Judy's signature on the line labeled, "Signature of Resident's Legal Representative in his/her Individual and Representative Capacity." We reject the argument.

Although Judy signed as Edward's legal representative, the fact of her signing did not cast her in that status. (*Flores, supra,* 148 Cal.App.4th at pp. 585, 589.) There was

16

no such person as Edward's legal representative at the time Judy signed the Carmichael Care arbitration agreement. Thus, the signature in that capacity was a mistake. "The doctrine of mistake customarily involves such errors as the nature of the transaction, *the identity of the parties*, the identity of the things to which the contract relates, or the occurrence of collateral happenings." (*Odorizzi v. Bloomfield School Dist*. (1966) 246 Cal.App.2d 123, 130, italics added.) Because there was no such person as Edward's legal representative there was also no legal representative to sign in his or her individual capacity.

At most, the arbitration agreement is ambiguous as to whether it intended Judy to sign in her individual capacity independent of her description as "Resident's Legal Representative." However, as the California Supreme Court noted in another case involving the interpretation of an arbitration agreement, "ambiguities in standard form contracts are to be construed against the drafter." (*Victoria v. Superior Court* (1985) 40 Cal.3d 734, 739.) Carmichael Care produced a form with a blank space expressly reserved for identifying parties to be bound by the agreement. However, Carmichael Care left this space blank. Moreover, Carmichael Care could have chosen to have Judy sign separately and expressly in her own right. It did not to do so. Accordingly, we conclude Judy is not bound in her individual capacity because her signature as legal representative was ineffective. Carmichael Care's medical practice arbitration agreement is identical and yields the same conclusion.

### 2. *Rosewood Terrace Arbitration Agreement*

Judy also is not individually bound by the arbitration agreement with Rosewood Terrace. Rosewood Terrace's arbitration agreement provides only that "*Resident* agrees to be bound by the forgoing arbitration provisions." (Italics added.) Judy was not the resident, and this agreement did not make anyone other than the facility and Edward parties to the contract. Consequently, Judy is not precluded from bringing her own claims. Even though the agreement purports to bind the unidentified resident, including

17

his or her "heirs, representatives, executors, administrators, successors, and assigns of such parties," Judy did not waive any of her individual claims by purporting to sign on Edward's behalf. As explained in part I, Judy had no authority to sign on behalf of Edward.

Based on Judy's ineffective signatures on the Carmichael Care and Rosewood Terrace arbitration agreements, we reject defendants' reliance on *Ruiz v. Podolsky* (2010) 50 Cal.4th 838 (*Ruiz*). *Ruiz* involved the question of whether a patient's agreement to arbitrate medical malpractice disputes, including wrongful death claims, could also bind the patient's heirs even though they themselves never signed the agreement. (*Id.* at p. 841.) The Supreme Court held the patient's assent to arbitration bound his successors and heirs even as to wrongful death claims that are independent actions accruing to a decedent's heirs. (*Ibid.*) Defendants in this case contend the holding in *Ruiz* applies to bind Judy to the arbitration agreements for her own wrongful death and negligent infliction of emotional distress claims. We reject the contention.

The fundamental difference between *Ruiz* and the present case is that this action does not involve a valid agreement to arbitrate –- either by Edward or by Judy. In *Ruiz*, the Supreme Court noted it has "emphasized that arbitration derives its legitimacy from the fact that the parties consent to resort to the arbitral forum rather than to litigation, with its possibility of a jury trial." (*Ruiz, supra,* 50 Cal.4th at p. 852.) Unlike the circumstance in *Ruiz*, Edward did not agree to arbitrate and thus did not bind any successor in interest to arbitrate claims on his behalf.

In sum, Judy was not a party to the arbitration agreements and therefore was not bound to arbitrate her claims.

### III

### *Public Policy*

Finally, Carmichael Care and Rosewood Terrace argue that "[p]ublic policy dictates that the arbitration agreements should be enforced." We reject the argument

18

because we are not at liberty to ignore the well established California law that "[t]he party seeking to compel arbitration bears the burden of proving the existence of a valid arbitration agreement." (*Flores, supra,* 148 Cal.App.4th at p. 586.) Even though it is true –- as defendants point out –- that "arbitration has become an accepted and favored method of resolving disputes" (*Madden v. Kaiser Foundation Hospitals* (1976) 17 Cal.3d 699, 706), it is well settled that an arbitration agreement requires consent. Simply put, " '[t]he strong public policy in favor of arbitration does not extend to those who are not parties to an arbitration agreement, and a party cannot be compelled to arbitrate a dispute that he [or she] has not agreed to resolve by arbitration.' " (*Lee v. Southern California University for Professional Studies* (2007) 148 Cal.App.4th 782, 786, quoting *Benasra v. Marciano, supra,* 92 Cal.App.4th at p. 990.)[6]

## DISPOSITION

The orders denying (1) the petition to compel arbitration filed by SunBridge Healthcare, LLC (formerly known as SunBridge Healthcare Corporation), Regency Health Services, Inc., Sun Healthcare Group, Inc., and SunBridge Carmichael Rehabilitation Center (doing business as Carmichael Care and Rehabilitation Center), and (2) the motion to compel arbitration filed by Carmichael Care, Inc. (doing business as Rosewood Terrace Care and Rehabilitation), North American Health Care, Inc., and John Sorensen are affirmed. Plaintiff Judy Goldman individually and as successor in interest

---

[6] Our conclusion that Judy did not have authority to sign the arbitration agreements for Edward and that she did not sign them on her own behalf obviates the need to consider whether the trial court properly exercised its discretion under Code of Civil Procedure section 1281.2, subdivision (c), to adjudicate the arbitrable and nonarbitrable claims in order to avoid the possibility of inconsistent rulings. We also express no opinion on defendants' claims that Code of Civil Procedure section 1281.2, subdivision (c), is preempted by the Federal Arbitration Act. So too, we decline to address defendant's arguments that the arbitration agreements were not unconscionable or oppressive.

19

of Edward Goldman shall recover her costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1) & (2).)


                                                  _____HOCH_____ , J.


We concur:


_____HULL_____ , Acting P. J.


_____BUTZ_____ , J.

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| JUDY GOLDMAN, etc., | |
| Plaintiff and Respondent, | C069970 |
| v. | (Super. Ct. No. 34201100104195CUPOGDS) |
| SUNBRIDGE HEALTHCARE, LLC et al., | |
| Defendants and Appellants. | ORDER FOR PUBLICATION |

APPEAL from a judgment of the Superior Court of Sacramento County, David I. Brown, J.  Affirmed.

Cole Pedroza, Curtis A. Cole, Kenneth R. Pedroza, Lisa Schwartz Tudzin; Wilke, Fleury, Hoffelt, Gould & Birney and Scott L. Gassaway for Defendants and Appellants SunBridge Healthcare, LLC (formerly known as SunBridge Healthcare Corporation), Regency Health Services, Inc., Sun Healthcare Group, Inc., and SunBridge Carmichael Rehabilitation Center (doing business as Carmichael Care and Rehabilitation Center); Schuering Zimmerman & Doyle and Lawrence S. Giardina for Defendants and Appellants Carmichael Care, Inc. (doing business as Rosewood Terrace Care and Rehabilitation), North American Health Care, Inc., and John Sorensen.

Hooper, Lundy & Bookman, Mark E. Reagan, Felicia Y Sze for The California Association of Health Facilities; Fred J. Hiestand for The Civil Justice Association of California as amici curiae on behalf of Defendants and Appellants.

The Law Office, Edward P. Dudensing and Christopher S. Buckley for Plaintiff and Respondent.

The opinion in the above entitled matter, filed on September 27, 2013, was not certified for publication in the Official Reports.  For good cause it now appears the opinion should be published in the Official Reports and it is so ordered.


FOR THE COURT:

       HULL       , Acting P.J.


       BUTZ       , J.


       HOCH       , J.