Filed 12/4/24; certified for publication 12/31/24 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| LISA LOMBARDO et al., | C098857 |
| Plaintiffs and Respondents, | (Super. Ct. No. 34-2022-00331467-CU-PO-GDS) |
| v. | |
| GRAMERCY COURT, | |
| Defendant and Appellant. | |

Plaintiffs Lisa Lombardo, Daniel Bates, and James Bates sued defendant Gramercy Court[1] as heirs of decedent Elizabeth Stein alleging several causes of action based on defendant's care of Stein during her stay at defendant's nursing facility shortly before Stein died.  Defendant petitioned to compel arbitration based on an arbitration

---

[1]     The original complaint listed defendant's name as "2200 Gramercy Drive, LLC." The complaint was amended on January 5, 2023, to change defendant's name to "GHC of SAC-SNF, LLC."  Defendant states it was erroneously sued under the wrong name and its correct name is "Gramercy Court."  We use the latter name in this opinion.

1

agreement Lombardo signed on behalf of Stein; the trial court denied the petition. Defendant argues on appeal Lombardo had actual or ostensible authority to execute the arbitration agreement based on Stein's durable power of attorney. Defendant alternatively argues plaintiffs are bound to arbitrate their individual claims. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

On December 15, 2022, plaintiffs filed a complaint against defendant and others who are not parties to this appeal alleging four causes of action: wrongful death, negligence, elder abuse, and gross negligence. The complaint alleged plaintiffs are heirs of Stein, who was injured from a fall and transferred from a hospital to defendant's skilled nursing and rehabilitation center. While at defendant's facility, Stein "developed numerous bedsores from [defendant's] lack of care." Stein eventually returned to the hospital and died shortly thereafter.

Defendant petitioned the trial court to compel arbitration. The petition relied on Stein's durable power of attorney, an arbitration agreement with defendant, and a declaration from an employee at defendant's facility.

Stein's durable power of attorney form first explained how "the powers granted by this document are broad and sweeping" but it "does not authorize anyone to make medical and other health-care decisions." (Capitalization & boldface omitted.) Stein then appointed plaintiff Lombardo as her agent to act for her in several subjects: "(B) [t]angible personal property transactions," "(E) [b]anking and other financial institution transactions," "(J) [p]ersonal and family maintenance," and "(K) [b]enefits from Social Security, Medicare, Medicaid, or other governmental programs, or military service." Subject "(J) [p]ersonal and family maintenance" included the authority to "hire accountants, attorneys at law, consultants, clerks, physicians, nurses, agents, servants, workmen, and others." Stein did not check subject (I) titled "[c]laims and litigation," which included the authority to "defend, settle, adjust, make allowances, compound, submit to arbitration, and compromise all accounts, reckonings, claims, and demands

2

whatsoever that now are, or hereafter shall be, pending between me and any person, firm, corporation, or other legal entity, in such manner and in all respects as my [a]gent shall deem proper." Stein signed the durable power of attorney on February 13, 2022, which was notarized.

Lombardo signed defendant's "resident-facility arbitration agreement" on July 6, 2022. (Capitalization & boldface omitted.) Stein's name was written on the line "[r]esident [n]ame" and defendant's facility name was written on the line "[f]acility [n]ame." The agreement stated, "Residents shall not be required to sign this arbitration agreement as a condition of admission to this facility," and provided that "any dispute as to medical malpractice" and "any dispute between [Stein] and [defendant] . . . that relates to the provision of care, treatment and services the [f]acility provides to [Stein] . . . including any action for injury or death arising from negligence, intentional tort and/or statutory causes of action . . . will be determined by submission to binding arbitration." Thus, "[b]oth parties to this contract, by entering into it, are giving up their constitutional right to have any such dispute decided in a court of law by a jury."

The arbitration agreement also stated it is "binding on all parties, including [Stein's] representatives, executors, family members, and heirs. [Stein's] representatives, agents, executors, family members, successors in interest and heirs who execute this [a]greement below on the '[r]esident [r]epresentative/[a]gent [s]ignature' line are doing so not only in their representative capacity for [Stein], but also in their individual capacity and thus agree that any claims brought individually by [Stein's] representatives . . . are subject to binding arbitration." Before the signature lines, the agreement stated: "The [r]esident and/or [r]esident's [r]epresentative/[a]gent . . . affirmatively represents that he/she is duly authorized, by virtue of the [r]esident's consent, instruction and/or durable power of attorney, to execute this [a]greement and accept its terms on behalf of the [r]esident. The [r]esident and/or [r]esident's [r]epresentative/[a]gent acknowledges that the [f]acility is relying on the aforementioned certification." Lombardo initialed the

3

first page of the agreement and signed the second page twice above the lines "[r]esident [r]epresentative/[a]gent [s]ignature." There was no signature above the lines for "[r]esident's [s]ignature."

Nima Pourfathi, the admissions director at defendant's facility, provided a signed declaration in support of the petition to compel arbitration. The declaration stated Pourfathi witnessed Lombardo sign the arbitration agreement as "the daughter and durable power of attorney for" Stein after Stein's admission to the facility. Pourfathi further declared, "Lombardo had an opportunity to completely review the arbitration agreement and ask any questions that she may have had. I do not recall either [Lombardo] or [Stein] having any questions."

The trial court denied defendant's petition to compel arbitration finding Stein's durable power of attorney did not give Lombardo the authority to sign arbitration agreements on her behalf, nor did Stein give Lombardo ostensible authority through her actions. The trial court also did not find the arbitration agreement enforceable against Lombardo's or the other plaintiffs' individual claims.

Defendant appeals.

DISCUSSION

I

*The Arbitration Agreement Does Not Apply To Stein's Claims*

Defendant contends Stein "intentionally gave Lombardo actual agency authority when she executed the [durable power of attorney]." Defendant focuses on Stein initialing on the power attorney form the authorization "to hire . . . physicians, nurses" and to "exercise all powers with respect to . . . Medicare and Medicaid." (Boldface omitted.) This authority, defendant argues, includes "the power to contract for [Stein's]

4

medical care." Defendant alternatively argues Lombardo had ostensible authority to enter the arbitration agreement for Stein. We disagree.

This court recently explained the standards involved with arbitration agreements in the context this case presents: " 'The right to compel arbitration depends on the existence of an agreement to arbitrate. [Citation.] Whether a valid agreement to arbitrate exists is determined under applicable contract law. [Citation.] "Generally, a person who is not a party to an arbitration agreement is not bound by it. [Citation.] However, there are exceptions. For example, . . . a person who is authorized to act as the [resident or] patient's agent can bind the [resident or] patient to an arbitration agreement." ' " (*Hearden v. Windsor Redding Care Center, LLC* (2024) 103 Cal.App.5th 1010, 1019 (*Hearden*).) An agency is either actual, " 'when the principal's conduct causes the agent reasonably to believe that the principal consents to the agent's act on behalf of the principal,' " or ostensible, " 'when the principal's conduct causes the third party reasonably to believe that the agent has the authority to act on the principal's behalf.' " (*Id*. at p. 1020.) Agent conduct alone cannot create an agency relationship, " ' "rather, conduct by the principal is essential to create the agency." [Citations.] " ' " 'The principal must in some manner indicate that the agent is to act for [the principal] . . . .' " ' " The party seeking to compel arbitration based on an agreement signed by an agent bears the burden of proving actual or ostensible agency. [Citation.] That party "does not meet its burden of [proof] . . . when it does not present any evidence that the purported principal's conduct caused the agent or the third party to believe that the agent had the authority to bind the principal." ' " (*Ibid*.)

"Whether interpreting a provision of a written instrument or statute, we seek the drafters' intent, and we start with the plain meaning of the provision's text and with its context within the statute or instrument. [Citations.] When a power of attorney is at issue, [our Supreme Court has] highlighted the importance of plain meaning by stating an agent operating under a power of attorney may not 'go beyond it nor beside it.' "

(*Harrod v. Country Oaks Partners, LLC* (2024) 15 Cal.5th 939, 951.) "The interpretation of a written instrument, such as the [durable power of attorney], is a question of law we review de novo. [Citations.] To the extent the court's order denying arbitration is based on a factual finding, we review for substantial evidence." (*Gordon v. Atria Management, Co., LLC* (2021) 70 Cal.App.5th 1020, 1026.)

A

*Lombardo Did Not Have Actual Authority*

We readily reject concluding Lombardo had actual authority to bind Stein to the arbitration agreement. The durable power of attorney provided Lombardo the authority to act as Stein's agent only in property and banking transactions, personal and family maintenance, and government benefits. Nowhere in the selected subject matter was the explicit authority to enter into arbitration agreements. To the contrary, Stein left unchecked the "[c]laims and litigation" subject matter permitting the authority to "submit to arbitration . . . all . . . claims." A plain reading from this delegation of authority to Lombardo does not include binding Stein to agreements to arbitrate. (See *Gordon v. Atria Management, Co., LLC*, *supra*, 70 Cal.App.5th at p. 1027 [finding durable power of attorney authorizing agent to " 'demand, *arbitrate*, and pursue litigation on [principal's] behalf' . . . reasonably includes the right to decide that future claims will be arbitrated"].)

The language defendant relies on in the durable power of attorney does not persuade us otherwise. Defendant argues the authority within the family maintenance subject to hire "physicians" and "nurses" and authority for decisions related to "Medicare" and "Medicaid" benefits means Lombardo had "the power to contract for Stein's medical care," and this includes "the power to execute the admission paperwork hiring defendant's skilled nursing facility to provide medical care to [Stein], and in turn the power to execute the subject voluntary arbitration agreement that was part of the admission packet." Initially, this reasoning ignores the line in the durable power of attorney stating it "d[id] not authorize anyone to make medical and other health-care

6

decisions." (Capitalization & boldface omitted.) Still, even assuming Lombardo did have the authority to make medical decisions for Stein, this authority is generally insufficient to include the right to bind the principal in arbitration. Our Supreme Court has found the authority to make "a 'health care decision' . . . excludes an optional, separate agreement that does not accomplish health care objectives," including an arbitration agreement. (*Harrod v. Country Oaks Partners, LLC*, *supra*, 15 Cal.5th at p. 966; *id*. at p. 964 [" 'health care decision' . . . excludes the optional, separate arbitration agreement"].) The arbitration agreement here was separate from and not necessary for Stein's admission into defendant's facility, and it did not require Lombardo to make a health care decision but instead a decision on how Stein can pursue legal action against defendant. The durable power of attorney therefore did not grant Lombardo the authority to sign this agreement on Stein's behalf.

B

*Lombardo Did Not Have Ostensible Authority*

Lombardo also did not have ostensible authority to bind Stein to the arbitration agreement. "An agency is ostensible when the principal intentionally, or by want of ordinary care, causes a third person to believe another to be his [or her] agent who is not really employed by him [or her]." (Civ. Code § 2300, see § 2317.) The essential elements of ostensible agency are: " 'representations by the principal, justifiable reliance thereon by a third party, and change of position or injury resulting from such reliance.' " (*Franklin v. Santa Barbara Cottage Hospital* (2022) 82 Cal.App.5th 395, 405.) Establishment of ostensible agency requires some conduct on the part of the principal. (*Flores v. Evergreen at San Diego, LLC* (2007) 148 Cal.App.4th 581, 589.)

Defendant argues an ostensible relationship existed because: "Lombardo held herself out as being duly authorized to execute various documents for [Stein]"; Stein provided the durable power of attorney to defendant, "caus[ing] defendant to believe in Lombardo's authority to execute the arbitration agreement"; "[d]ecedent's silence caused

7

defendant to believe that [Stein] had no questions about the arbitration agreement nor any issue with Lombardo's authority to execute it"; and Stein "ratified" the agreement by not rescinding it within the period allotted by the arbitration agreement.

Defendant fails to identify valid evidence establishing ostensible authority. First, Lombardo could not create agency on her own, so whether she held herself out as having authority is insufficient. (*Young v. Horizon West, Inc.* (2013) 220 Cal.App.4th 1122, 1132 ["ostensible authority cannot be created merely by a purported agent's representation"].)

Second, the record does not support the allegations of Stein's action or knowing inaction. Pourfathi declared to witnessing Lombardo sign the agreement as "the daughter and durable power of attorney for" Stein. Pourfathi did not declare Stein, as opposed to Lombardo, provided her the durable power of attorney to indicate Lombardo's authority to execute the arbitration agreement. Defendant's silence and ratification arguments also rely on speculation Stein understood what was happening. Defendant argues: "Since [Stein] was competent upon admission, she would have been aware that there were written agreements required as part of her residency and care at the facility." There is no support in the record Stein was competent, no support Stein was aware of the admissions agreements, and more specifically, no support Stein was aware of the arbitration agreement that was not necessary for admission. Defendant holds the burden to establish evidence of an ostensible relationship and "[t]here is no evidence [Stein] made any relevant representation or concealed any facts or intended defendant[] to act in reliance on any relevant facts." (*Hearden*, *supra*, 103 Cal.App.5th at p. 1021.) Defendant therefore fails to establish error.

Finally, defendant argues for us to create an exception to agency and arbitration rules for nursing homes. Defendant states "in the skilled nursing industry, residents' family members routinely sign admission and other documents on behalf of the elderly and/or infirm population served by" defendant's facility, and so "[s]crutiny of the agent's ostensible authority to sign all documents presented in the context of admission to a

8

nursing home must be adjusted to fit these circumstances." This is a policy argument outside our authority to consider. Current law permits binding a principal to an arbitration agreement only if the agent had authority to do so. (*Hearden*, *supra*, 103 Cal.App.5th at p. 1019.) We cannot create a unique exception to established agency and arbitration law for nursing homes. Defendant's policy arguments may be valid, but these arguments are the purview of the Legislature, which "has failed to specify that next of kin have authority to agree to arbitration." (*Flores v. Evergreen at San Diego, LLC*, *supra*, 148 Cal.App.4th at p. 594; see *Perez v. Roe 1* (2006) 146 Cal.App.4th 171, 177 [the Legislature makes law by "weighing competing interests and determining social policy," whereas the judiciary "interpret[s] and appl[ies] existing laws"].) Applying the law in effect now, we conclude Lombardo could not bind Stein to the arbitration agreement.

II

*The Arbitration Agreement Does Not Apply To Plaintiffs' Individual Claims*

Defendant alternatively argues, "At the very least, the petition to compel arbitration as to Lombardo's and the other heirs' wrongful death claims should have been granted." Defendant relies on the language in the arbitration agreement stating Lombardo was signing both in her representative and "individual capacity." We disagree.

Central to the parties' arguments is the relevance *of Goldman v. Sunbridge Healthcare, LLC* (2013) 220 Cal.App.4th 1160 (*Goldman*), a case from a different panel of this court. There, a decedent's spouse sued nursing homes on behalf of the decedent and the trial court denied the nursing homes' petitions to compel arbitration. (*Id*. at pp. 1165-1167.) We first concluded, for reasons not relevant to this case, the nursing homes did not establish the spouse had authority to agree to arbitration on the decedent's behalf. (*Id*. at pp. 1173-1174.) We then concluded the spouse did not sign on her own behalf based on language of the arbitration agreements. (*Ibid*.) The first facility required the spouse sign an arbitration agreement stating it was "by and between the parties,

9

[r]esident [the decedent] and [r]esident's [l]egal [r]epresentative _____ (collectively referred to hereinafter as '[r]esident'), and the [f]acility . . . . The [r]esident's [l]egal [r]epresentative agrees that he or she is executing this agreement as a party, both in his or her representative and individual capacity." (*Id*. at p. 1174.) The spouse also signed on the line titled: " 'Signature of [r]esident's [l]egal [r]epresentative in his/her [i]ndividual and [r]epresentative [c]apacity.' " (*Id*. at pp. 1174-1175.)

We concluded the spouse was not a party to the first facility's arbitration agreement. (*Goldman*, *supra*, 220 Cal.App.4th at p. 1176.) She was not a resident, nor was she the legal representative as previously found, and the facility did not list the spouse on the line to name the resident's legal representative. (*Ibid*.) We also rejected the facility's argument the spouse was signing " 'both in his or her representative *and individual capacity*.' " (*Ibid*.) The spouse was not the decedent's legal representative so her "signature in that capacity was a mistake." (*Ibid*.) Thus, "[b]ecause there was no such person as [the decedent's] legal representative there was also no legal representative to sign in his or her individual capacity." (*Ibid*.) We concluded, "At most, the arbitration agreement is ambiguous as to whether it intended [the spouse] to sign in her individual capacity independent of her description as '[r]esident's [l]egal [r]epresentative.' However, as the California Supreme Court noted in another case involving the interpretation of an arbitration agreement, 'ambiguities in standard form contracts are to be construed against the drafter' " and the facility chose to not have the spouse "sign separately and expressly in her own right." (*Id*. at pp. 1176, 1177.)

There are no material differences between *Goldman* and the present case and we consequently apply it to conclude Lombardo was not a party to the arbitration agreement. Just like in *Goldman*, the agreement here stated, "[W]ho[ever] execute[s] this [a]greement below on the '[r]esident [r]epresentative/[a]gent [s]ignature' line [is] doing so *not only in their representative capacity* for [Stein], *but also* in their individual capacity." (Italics added; see *Goldman*, *supra*, 220 Cal.App.4th at pp. 1174-1175.)

10

Lombardo also signed the agreement on the line " '[r]esident [r]epresentative/[a]gent [s]ignature.' " For the reasons previously stated, Lombardo could not sign as a representative of Stein and individually because *she was not Stein's legal representative.* Lombardo therefore was not an individual who could sign both as a representative and as an individual.

The agreement also indicated only two parties. The agreement was titled "*RESIDENT-FACILITY* ARBITRATION AGREEMENT" (boldface omitted, italics added) and stated "[*b*]*oth* parties to this contract, by entering into it, are giving up their constitutional right to have any such dispute decided in a court of law before a jury," (italics added) and the only parties written in were the decedent and defendant's facility. This establishes Stein and defendant were the only identified parties to the arbitration agreement. We therefore do not find any ambiguity in this agreement, and even if there was, we would have to construe it against defendant. (*Goldman*, *supra*, 220 Cal.App.4th at pp. 1176-1177.)

Furthermore, because we conclude Lombardo, the heir who signed the arbitration agreement, was not bound by the agreement, there is no basis to bind the other plaintiffs in this case to the arbitration agreement. We therefore conclude the arbitration agreement is not enforceable against all plaintiffs.

Finally, defendant relies on *Ruiz v. Podolsky* (2010) 50 Cal.4th 838 to argue plaintiffs' wrongful death claims must be compelled to arbitration. We need not do a full explication of *Ruiz* because it is inapplicable for the same reasons it was inapplicable in *Goldman*: "The fundamental difference between *Ruiz* and the present case is that this action does not involve a valid agreement to arbitrate—either by [Stein] or by [Lombardo]. In *Ruiz*, the Supreme Court noted it has 'emphasized that arbitration derives its legitimacy from the fact that the parties consent to resort to the arbitral forum rather than to litigation, with its possibility of a jury trial.' (*Ruiz*, . . . p. 852.) Unlike the circumstance in *Ruiz*, [Stein] did not agree to arbitrate and thus did not bind any

11

successor in interest to arbitrate claims on [her] behalf." (*Goldman*, *supra*, 220 Cal.App.4th at p. 1177.)

## DISPOSITION

The order of the trial court denying defendant's petition to compel arbitration is affirmed. Respondents shall recover their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)


/s/_____
ROBIE, J.



We concur:


/s/_____
EARL, P. J.



/s/_____
MAURO, J.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| LISA LOMBARDO et al., | C098857 |
| Plaintiffs and Respondents, | (Super. Ct. No. 34-2022-00331467-CU-PO-GDS) |
| v. | |
| GRAMERCY COURT, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Sacramento County, Richard K. Sueyoshi, Judge. Affirmed.

Lewis Brisbois Bisgaard & Smith, Tracy D. Forbath, Kathleen M. Walker, Suzanne L. Schmidt and Kevin L. Eng for Defendant and Appellant.

Cianchetta & Associates and Peter L. Cianchetta for Plaintiffs and Respondents.

THE COURT:

The opinion in the above-entitled matter filed on December 4, 2024, was not certified for publication in the Official Reports.  For good cause, it now appears that the opinion should be published in the Official Reports and it is so ordered.


BY THE COURT:


/s/_____
ROBIE, J.


/s/_____
EARL, P. J.


/s/_____
MAURO, J.

2