69 Cal.Rptr.3d 783 (2007)
158 Cal.App.4th 443
Yvonne WARFIELD, Plaintiff and Respondent,
v.
SUMMERVILLE SENIOR LIVING, INC., Defendant and Appellant.
No. G038392.
Court of Appeal of California, Fourth District, Division Three.
December 24, 2007.
*784 Lewis, Brisbois, Bisgaard & Smith, Bryan R. Reid, Redlands, Rima M. Badawiya and Jennifer C. Hsu, San Bernardino, for Defendant and Appellant.
Law Offices of Michael F. Moran, Michael F. Moran, Tustin, and Lisa Trinh Flint for Plaintiff and Respondent.

*785 OPINION
MOORE, J.
Plaintiff Yvonne Warfield (Yvonne),[1] a resident of a residential care facility for the elderly, brought an action against Summerville Senior Living, Inc. dba Summerville at Brookhurst (Summerville) for elder abuse and other claims. Summerville filed a petition to compel arbitration, based on an arbitration agreement Yvonne's husband had signed. The trial court denied the petition and Summerville appeals.
Summerville claims that, even though Yvonne's husband did not hold a power of attorney when he signed the arbitration agreement, he nonetheless had the authority, either as her ostensible agent or as her spouse, to bind her to the agreement. It also claims that Yvonne is estopped to deny the enforceability of the arbitration agreement. We reject Summerville's arguments and affirm.

I

FACTS
Yvonne alleged in her complaint that she was born in 1918 and was admitted into the Summerville facility in 2004. She further alleged that the reason she was admitted was because she was suffering from dementia and was no longer able to care for herself.[2] Yvonne also alleged that, although the facility had a dementia care unit, she was not placed in that unit, but was placed in the assisted living unit instead. In addition, she alleged that, in 2006, she fell and was found face down in her bathroom at the facility, having sustained multiple fractures. Yvonne's complaint asserted causes of action for elder abuse, negligence, negligence per se, willful misconduct, and negligent infliction of emotional distress.
Summerville's petition to compel arbitration was based on the assertion that in 2005, Yvonne's husband, John Warfield (John), had executed an arbitration agreement on behalf of both Yvonne and himself, each of whom were Summerville residents at the time.[3] Attached to the petition was a copy of an arbitration agreement. At the top of the form was a space for the name of the resident. The name John Warfield was written in that space. Immediately below the space for the resident's name, the name Yvonne Warfield was written. At the bottom of the form were spaces for the signature of the resident and for the signature of the representative of the resident. A signature appearing to read "John R. Warfield" was written above the line for the resident's signature. No signature appeared above the line provided for the resident's representative. Yvonne did not sign the agreement.
In the petition to compel, Summerville argued that John had executed the arbitration agreement on behalf of each of Yvonne and himself and that he had the full authority to bind Yvonne to the agreement even though she was a nonsignatory. *786 Summerville claimed that John had the authority to bind Yvonne, as her ostensible agent and as her spouse. It also asserted that Yvonne, having enjoyed the benefits of Summerville's residential care services, was estopped to deny the enforceability of the arbitration agreement.
The trial court rejected Summerville's arguments and denied the petition to compel arbitration. Summerville appeals, reasserting the same arguments.

II

DISCUSSION
"The party seeking to compel arbitration bears the burden of proving the existence of a valid arbitration agreement. [Citations.] Petitions to compel arbitration are resolved by a summary procedure that allows the parties to submit declarations and other documentary testimony and, at the trial court's discretion, to provide oral testimony. [Citations.] If the facts are undisputed, on appeal we independently review the case to determine whether a valid arbitration agreement exists. [Citations.]" (Flores v. Evergreen at San Diego, LLC (2007) 148 Cal.App.4th 581, 586, 55 Cal.Rptr.3d 823 (hereafter Flores).) Since the facts are undisputed in the matter before us, we review the matter de novo.
Summerville contends that the issue before this court is one of first impression. Yvonne, on the other hand, maintains that the issue has been neatly resolved in her favor in Flores, supra, 148 Cal.App.4th 581, 55 Cal.Rptr.3d 823. Despite Summerville's protestations that Flores is distinguishable, we agree with Yvonne: Flores controls. Furthermore, we disagree with Summerville's contention that Flores was poorly decided.
The facts in Flores, supra, 148 Cal. App.4th 581, 55 Cal.Rptr.3d 823 bear close similarity to the facts at hand. In Flores, the husband signed two arbitration agreements upon admitting his wife, who was suffering from dementia, into a skilled nursing facility. (Id. at pp. 584-585, 55 Cal.Rptr.3d 823.) At the time, he did not hold a power of attorney on her behalf, and had not been appointed as either her guardian or her conservator. (Id. at p. 585, 55 Cal.Rptr.3d 823.) The husband and wife filed a complaint against the facility, alleging that its staff was responsible for the wife's leg fracture, suffered in a fall. (Ibid.) The facility filed a petition to compel arbitration, based on the arbitration agreements the husband had signed. (Id. at p. 586, 55 Cal.Rptr.3d 823.)
The trial court denied the petition and the appellate court affirmed. (Flores, supra, 148 Cal.App.4th at pp. 584-585, 55 Cal.Rptr.3d 823.) In reaching its decision, the appellate court first addressed whether the husband had authority either as the wife's agent or as her spouse to bind her to the arbitration agreements. (Id. at pp. 587-589, 55 Cal.Rptr.3d 823.) It concluded that he had no such authority. (Ibid.) The court then addressed, in the alternative, whether the husband had statutory authority, under various Health and Safety. Code provisions pertaining to skilled nursing facilities, to bind the wife to the arbitration agreements. It answered that question in the negative as well. (Id. at pp. 590-594, 55 Cal.Rptr.3d 823.)
Summerville contends that Flores, supra, 148 Cal.App.4th 581, 55 Cal.Rptr.3d 823 is not controlling, because that case had to do with the statutes and regulations affecting skilled nursing facilities. Summerville maintains that those statutes and regulations are inapplicable to residential care facilities for the elderly. It does not address whether any of the statutes or regulations governing residential care facilities for the elderly create an authority *787 in one spouse to bind the other to arbitration or whether the Flores court's analysis should apply by analogy to that body of law. Consequently, Summerville has not demonstrated any statutory basis for John's purported authority to bind Yvonne. Indeed, Summerville makes no claim that any statutory basis exists, and insists that it was John's status either as agent or as spouse that gave him the authority to bind Yvonne. On this score, Flores is dispositive, because its first reason for affirming the order denying the petition to compel arbitration was that the husband had no authority either as agent or as spouse to bind the wife to the arbitration agreements.
As the Flores court explained: "Agency `can be established either by agreement between the agent and the principal, that is, a true agency [citation], or it can be founded on ostensible authority, that is, some intentional conduct or neglect on the part of the alleged principal creating a belief in the minds of third persons that an agency exists, and a reasonable reliance thereon by such third persons.' [Citations.] `"`The principal must in some manner indicate that the agent is to act for him, and the agent must act or agree to act on his behalf and subject to his control'..." [Citations.] Thus, the "formation of an agency relationship is a bilateral matter. Words or conduct by both principal and agent are necessary to create the relationship[Citation.]" (Flores, supra, 148 Cal.App.4th at p. 588, 55 Cal.Rptr.3d 823.)
In applying these principles, the Flores court noted that the facility had presented evidence pertaining only to the husband's conduct, such as signing the arbitration agreements. It had presented no evidence whatsoever pertaining to the wife's conduct. (Flores, supra, 148 Cal. App.4th at p. 588, 55 Cal.Rptr.3d 823.) As the court observed, "an agency cannot be created by the conduct of the agent alone; rather, conduct by the principal is essential to create the agency." (Id. at pp. 587-588, 55 Cal.Rptr.3d 823.) "It was [the facility's] burden to show the validity of the arbitration agreement based on [the wife's] express or implied consent to have her husband act as her agent. [T]he record [was] devoid of any such evidence." (Id, at p. 589, 55 Cal.Rptr.3d 823.)
In the case before us, likewise, the facility has presented absolutely no evidence of the wife's "express or implied consent to have her husband act as her agent." (Flores, supra, 148 Cal.App.4th at p. 589, 55 Cal.Rptr.3d 823.) In its opening brief on appeal, Summerville proclaims that Yvonne, "at the time of her admission, as well as throughout her residency, ... never once voiced disagreement to the living arrangement elected by her husband. Rather, she willingly accepted the services elected by her husband to be provided by the facility. In doing so, she acquiesced to her husband's representation as her agent and [Summerville] reasonably relied on such representation." This argument is unavailing, for two reasons. First, it is unsupported by citations to the record. Therefore, it is deemed waived. (Del Real v. City of Riverside (2002) 95 Cal.App.4th 761, 768, 115 Cal.Rptr.2d 705.) Second, even had Summerville supported its argument with record references, we would note that the failure of a resident suffering from dementia to object to the living arrangements her husband had made would hardly constitute evidence that she had authorized him to act as her agent in waiving her right to a jury trial. Summerville has provided no more evidence of conduct by Yvonne that would create an agency than the facility in Flores, supra, 148 Cal.App.4th 581, 55 Cal.Rptr.3d 823 presented with respect to its elderly resident. *788 The creation of an ostensible agency has not been shown.
Summerville disagrees, insisting that John, simply by virtue of being Yvonne's spouse, had the authority to bind her to the arbitration agreement. As Summerville points out, the Flores court acknowledged that "`much less evidence is required to establish a principal and agent relationship between husband and wife than between nonspouses.' [Citation.]" (Flores, supra, 148 Cal.App.4th at p. 589, 55 Cal.Rptr.3d 823.) However, the Flores court also went on to state: "Here, however, [the facility] presented no evidence of agency apart from the marital relationship. Although the establishment of an agency relationship between spouses does not require a high level of proof, the [plaintiffs'] marital relationship cannot alone create an agency." (Ibid., fn. omitted.)
Summerville says that Flores, supra, 148 Cal.App.4th 581, 55 Cal.Rptr.3d 823 notwithstanding, there are many cases supporting the proposition that one spouse can bind a nonsignatory spouse to arbitration, including but not limited to Buckner v. Tamarin (2002) 98 Cal.App.4th 140, 119 Cal.Rptr.2d 489, NORCAL Mutual Ins. Co. v. Newton (2000) 84 Cal.App.4th 64, 100 Cal.Rptr.2d 683, and Bolanos v. Khalatian (1991) 231 Cal.App.3d 1586, 283 Cal. Rptr. 209. Based on these and other authorities, Summerville avers that to disavow this proposition would be to undermine the public policy favoring marriage and the powers arising out of that legal relationship.
The Flores court aptly explained why these lines of cases are not on point. As it said, "Some decisions contain broad dicta stating spouses can bind each other to arbitration agreements. (See, e.g., Buckner v. Tamarin, supra, 98 Cal.App.4th at pp. 142-143 [119 Cal.Rptr.2d 489]; [citation].) However, the supporting cases cited in these decisions do not stand for such a broad proposition, but arise in situations where the spouse who was the patient bound the other spouse to arbitration of claims arising from the medical treatment, or a spouse who purchased insurance bound the other spouse who accepted the benefits of the policy. (See Bolanos v. Khalatian, supra, 231 Cal.App.3d at p. 1591 [283 Cal.Rptr. 209]; [citation]; NORCAL Mutual Ins. Co. v. Newton (2000) 84' Cal.App.4th 64, 77-78 [100 Cal.Rptr.2d 683].)" (Flores, supra, 148 Cal.App.4th at p. 589, fn. 4, 55 Cal.Rptr.3d 823.)
In the medical malpractice context, we have previously stated that there are compelling reasons "for requiring nonsignatory spouses to arbitrate their claims arising out of injuries suffered by the signatory spouse. [¶] Two competing rights are at stake: the patient's right of privacy and the spouse's right to jury trial of a treatment-related claim. Without trivializing the latter right, we believe the ... focus [is] most appropriately placed on the sanctity of the physician-patient relationship a safe haven which would be severely threatened if the physician were obliged to obtain the signature of the patient's spouse to the arbitration agreement." (Mormile v. Sinclair (1994) 21 Cal.App.4th 1508, 1514, 26 Cal.Rptr.2d 725.) The sarne considerations are not at stake in the case before us, where the physician-patient relationship is not at issue.
The case before us also does not evoke the same considerations as those at issue in certain insurance benefits cases, such as NORCAL Mutual Ins. Co. v. Newton, supra, 84 Cal.App.4th 64, 100 Cal.Rptr.2d 683. In that case, the husband, a psychiatrist, purchased medical malpractice insurance. When he and his wife, who allegedly had provided unauthorized services in connection with the husband's practice, were both sued, they mutually tendered the *789 matter to the insurer for defense and indemnity. (Id. at pp. 66-67, 100 Cal. Rptr.2d 683.) At one point, both the husband and the wife demanded that the insurer submit certain issues arising under the policy to arbitration. (Id. at pp. 69-70, 100 Cal.Rptr.2d 683.) The insurer responded by choosing an arbitrator and raising its own claims against the husband and wife. (Id. at p. 69, 100 Cal.Rptr.2d 683.) The wife's counsel later suggested that all parties release their claims against each other. (Id. at p. 70, 100 Cal.Rptr.2d 683.) When the insurer continued to press its demand for arbitration, counsel for the wife then said that she would not consent to arbitration. (Ibid.) The insurer brought a petition to compel arbitration, which was denied. (Id. at p. 71, 100 Cal.Rptr.2d 683.)
The appellate court reversed. (NORCAL Mutual Ins. Co. v. Newton, supra, 84 Cal.App.4th at p. 84, 100 Cal.Rptr.2d 683.) It stated: "[I]t is clear that ... [the wife's] demands for arbitration, along with her acceptance of a defense funded by [the insurer] in the malpractice case and agreement to the settlement resulting from that defense, constituted conduct seeking the benefit, and therefore requiring acceptance of the burden, of the insurance policy." (Id. at p. 81, 100 Cal.Rptr.2d 683.) The case before us is distinguishable, however, inasmuch as Yvonne has not sought to receive the benefit of the arbitration agreement her husband signed; that is, she has not sought to compel Summerville to arbitrate.
Summerville maintains that the principles enunciated in NORCAL Mutual Ins. Co. v. Newton, supra, 84 Cal.App.4th 64, 100 Cal.Rptr.2d 683 should be applied to hold that Yvonne is estopped to deny the enforceability of the arbitration agreement John signed. It emphasizes the statement of the NORCAL court that an individual is "not entitled to make use of the [contract] as long as it [works] to her advantage, then attempt to avoid its application in defining the forum in which her dispute ... should be resolved." (Id. at p. 84, 100 Cal.Rptr.2d 683.) However, unlike the wife in NORCAL, Yvonne is not trying to take advantage of certain provisions of a contract while avoiding the application of other provisions of that same contract. Rather, Yvonne has utilized the services of the residential care facility as provided under certain admissions documents. Those are separate agreements from the arbitration agreementa different, optional agreement. Yvonne has not sought to make use of the arbitration agreement and she is not estopped to assert that it is unenforceable against her.

III

DISPOSITION
The order is affirmed. Yvonne shall recover her costs on appeal.
WE CONCUR: RYLAARSDAM, Acting P.J., and BEDSWORTH, J.
NOTES
[1] For clarity, we will refer to Yvonne Warfield, and her husband John Warfield, by their first names. We intend no disrespect by this informality. (Hogan v. Country Villa Health Services (2007) 148 Cal.App.4th 259, 263, fn. 1, 55 Cal.Rptr.3d 450.)
[2] We observe that the complaint was filed by Yvonne by and through her daughter, Cheryl Coleman, as her attorney-in-fact.
[3] In its opening brief, Summerville represents that Yvonne and John were both residents of the facility when it changed hands, at which time, Summerville and the residents executed new documents.