Filed 12/13/23  Harbaugh v. BKD Arbors of Santa Rosa CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| ROBERT HARBAUGH et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> BKD ARBORS OF SANTA ROSA, LLC, et al., <br><br> Defendants and Appellants. | A168599 <br><br> (Sonoma County <br> Super. Ct. No. SCV-272523) |

Robert Harbaugh, who was 82 years old and had dementia and Parkinson's disease, was admitted to a residential care facility.  He died a few months later, after suffering several falls.  Harbaugh's wife and children (collectively, plaintiffs) sued the facility and associated entities (collectively, defendants), alleging claims on both Harbaugh's behalf and their own.[1]

Defendants filed a motion to compel arbitration of all the causes of action, based on an arbitration agreement in the residency agreement Harbaugh's wife signed when Harbaugh was admitted to the residential care facility.  The trial court denied the motion, holding that Harbaugh's wife did

---

[1] Plaintiffs are Harbaugh's wife, his daughter, and his five sons, including one who is his successor-in-interest.  Defendants are BKD Arbors of Santa Rosa, LLC d/b/a Brookdale Chanate (Brookdale Chanate), Brookdale Senior Living Communities, Inc., and Brookdale Senior Living, Inc.

not have authority to bind him to arbitration. On appeal from this ruling, defendants argue that Harbaugh's wife did have such authority and Harbaugh is estopped from claiming the arbitration agreement is unenforceable. We affirm.

## I.
### FACTUAL AND PROCEDURAL BACKGROUND

As alleged in the complaint, Harbaugh was admitted to Brookdale Chanate, a Santa Rosa residential care facility for the elderly, in mid-September 2021. Harbaugh's wife "no longer felt she was able to adequately provide him with the care he needed," with falls being a particular concern. Brookdale Chanate assessed Harbaugh as having a high risk for falling but "failed to actually generate any real plan or identify concrete interventions that would protect [him] from falling." Harbaugh then sustained serious falls, requiring hospital visits, in late September and mid-October. Later in October, after the hospital refused to discharge him to Brookdale Chanate, he was transferred to another facility. His "condition continued to deteriorate," and he died on November 19, 2021.

Plaintiffs sued defendants in January 2023. The complaint alleges causes of action for elder neglect, negligence, and constructive fraud on Harbaugh's behalf and negligent infliction of emotional distress and wrongful death on plaintiffs' own behalf. After answering the complaint, defendants filed a motion to compel arbitration of all the claims.

The motion to compel arbitration rested on a 17-page "Residency Agreement" between Brookdale Chanate and Harbaugh (residency agreement), which Harbaugh's wife signed as his "Legal Representative." The agreement contains a typed provision identifying her legal authority to sign as "Healthcare Power of Attorney." It is undisputed on appeal that in

2

fact, Harbaugh's wife never had durable power of attorney over his healthcare decisions.

The residency agreement contains a three-page "Agreement to Arbitrate" (arbitration agreement). The arbitration agreement requires arbitration of "[a]ny and all claims or controversies arising out of, or in any way relating to[,] services and care provided by [Brookdale Chanate] pursuant to [the residency agreement], and including disputes regarding interpretation of [the residency agreement]," except that it "does not apply to actions for eviction, tenant's rights, landlord-tenant issues[,] or housing-related claims."

In July 2023, after a hearing, the trial court issued a written order denying the motion to compel arbitration. The court rejected defendants' arguments that plaintiffs were bound by the arbitration agreement on the bases that (1) Harbaugh's wife signed the residency agreement as Harbaugh's "Healthcare Power of Attorney"; (2) Harbaugh's wife "had the power to bind [Harbaugh] to the arbitration agreement merely by being his wife"; and (3) "[Harbaugh] accepted the other terms of the contract, . . . and he cannot pick and choose which portions of the contract he now wishes to accept."

## II.
## DISCUSSION

On appeal, defendants do not challenge the trial court's conclusion that they failed to establish Harbaugh's wife held healthcare power of attorney. Rather, they contend she had a fiduciary duty "to obtain and provide housing and medical care for her husband," meaning she had authority to sign the residency agreement—and thus the arbitration agreement—on Harbaugh's behalf. They also claim Harbaugh is estopped from denying that the arbitration agreement is enforceable. We are not persuaded on either count.

3

"The party seeking to compel arbitration bears the burden of proving the existence of a valid arbitration agreement." (*Flores v. Evergreen at San Diego, LLC* (2007) 148 Cal.App.4th 581, 586 (*Flores*).) " 'Although "[t]he law favors contracts for arbitration of disputes between parties" [citation], " 'there is no policy compelling persons to accept arbitration of controversies which they have not agreed to arbitrate.' " ' " (*Goldman v. Sunbridge Healthcare, LLC* (2013) 220 Cal.App.4th 1160, 1169 (*Goldman*).) Thus, the general rule is that " ' "one must be a party to an arbitration agreement to be bound by it or invoke it." ' " (*Pillar Project AG v. Payward Ventures, Inc.* (2021) 64 Cal.App.5th 671, 675.)

There are exceptions to this rule. " ' " [A]s one authority has stated, there are six theories by which a nonsignatory [to an agreement] may be bound to arbitrate: "(a) incorporation by reference; (b) assumption; (c) agency; (d) veil-piercing or alter ego; (e) estoppel; and (f) third[-]party beneficiary." ' " ' " (*Pillar Project AG v. Payward Ventures, Inc.*, *supra*, 64 Cal.App.5th at p. 675.) Only the theories of agency and estoppel are at issue here. Whether an arbitration agreement is binding on a nonsignatory is a question of law that we review de novo. (*Ibid.*)

Initially, we note that neither the parties nor the trial court clearly distinguished between individual plaintiffs or causes of action in determining whether the arbitration agreement is enforceable. Thus, while the analysis arguably differs for the claims that Harbaugh's family members brought on their own behalf, we consider only whether Harbaugh was bound to arbitrate his own claims through his wife's execution of the residency agreement.

In denying the motion to compel arbitration, the trial court relied on several cases holding that marital status alone does not convey agency to sign an arbitration agreement on a spouse's behalf. (*Valentine v. Plum Healthcare*

4

*Group, LLC* (2019) 37 Cal.App.5th 1076, 1083–1085; *Goldman*, *supra*, 220 Cal.App.4th at pp. 1171–1172; *Warfield v. Summerville Senior Living, Inc.* (2007) 158 Cal.App.4th 443, 447–449 (*Warfield*); *Flores*, *supra*, 148 Cal.App.4th at pp. 586–587.) All these cases involved arbitration agreements signed in connection with the nonsignatory spouse's placement in a skilled nursing facility or, as here, a residential care facility for the elderly. (*Valentine*, at pp. 1080–1081; *Goldman*, at p. 1164; *Warfield*, at pp. 444–445; *Flores*, at p. 585.)

Defendants argue that these cases are distinguishable because they involved stand-alone arbitration agreements, whereas the arbitration agreement here was part of the residency agreement. According to defendants, this distinction is significant because Harbaugh's wife had fiduciary duties to ensure he had housing and medical care, and she was thus "legally obligated to execute" the residency agreement.

*Flores* rejected a similar argument. The Fourth District Court of Appeal "agree[d] that spouses are fiduciaries and owe a duty of support in the family law context," but it concluded that "these duties do not create a power to contractually bind each other in the agency context." (*Flores*, *supra*, 148 Cal.App.4th at p. 589; accord *Goldman*, *supra*, 220 Cal.App.4th at pp. 1172–1173.)[2] *Flores* also observed that "[u]nlike admission decisions and medical care decisions, the decision whether to agree to an arbitration

_____

[2] *Flores* recognized that "[s]ome decisions contain broad dicta stating spouses can bind each other to arbitration agreements" but concluded that this proposition did not apply across the board because it was supported by cases addressing different situations, such as where a "patient bound the other spouse to arbitration of claims arising from the [patient's] medical treatment." (*Flores*, *supra*, 148 Cal.App.4th at p. 589, fn. 4.) Defendants do not convincingly explain why we should apply such cases instead of *Flores* and other decisions involving more analogous facts.

provision in a nursing home contract is not a necessary decision that must be made to preserve a person's well-being. Rather, an arbitration agreement pertains to the patient's legal rights, and results in a waiver of the right to a jury trial." (*Id.* at p. 594.) Thus, while Harbaugh's wife may have signed the residency agreement in fulfillment of her fiduciary duties to Harbaugh, she had no fiduciary duty to execute the arbitration agreement on his behalf.

Our conclusion is not altered merely because the arbitration agreement was part of the residency agreement instead of being a stand-alone document. Harbaugh had no obligation to agree to arbitration to enter Brookdale Chanate. The arbitration agreement states that the resident or resident's legal representative "understand[s] that you have the choice to opt out of [the provisions requiring arbitration] with respect to any future, but not existing, claims against [Brookdale Chanate]," and provides a space to sign to opt out. The arbitration agreement also states that consent to arbitrate may be withdrawn within 30 days upon written notice to Brookdale Chanate. Thus, Harbaugh's wife could have signed the residency agreement on Harbaugh's behalf without agreeing to arbitration.

Defendants also claim that Harbaugh is estopped from denying that the arbitration agreement is enforceable because he enjoyed the benefits of the residency agreement. They rely on *NORCAL Mutual Ins. Co. v. Newton* (2000) 84 Cal.App.4th 64 (*NORCAL*), in which Division Two of this court addressed an arbitration provision in a medical-malpractice insurance policy bought by a psychiatrist. (*Id.* at pp. 66, 72.) The psychiatrist and his wife, who allegedly provided unauthorized treatment herself, were both sued for malpractice, and they sought defense and indemnity from the insurer. (*Id.* at pp. 66–67.) At one point, after the malpractice action settled, they demanded arbitration of certain issues under the policy, but the wife later

6

purported to withdraw her consent to arbitration. (*Id.* at pp. 68–70.) *NORCAL* held that the wife was bound to arbitrate her claims, because her "demands for arbitration, along with her acceptance of a defense funded by [the insurer] in the malpractice case and agreement to the settlement resulting from that defense, constituted conduct seeking the benefit, and therefore requiring acceptance of the burden, of the insurance policy." (*Id.* at p. 81.)

*Warfield*, which like this case concerned an arbitration agreement pertaining to a nonsignatory spouse's placement in a residential care facility, distinguished *NORCAL* and declined to apply it. (*Warfield*, *supra*, 158 Cal.App.4th at pp. 445, 450.) First, unlike the *NORCAL* wife, the *Warfield* nonsignatory wife never sought to compel the facility to arbitrate. (*Id.* at p. 450.) Second, unlike the *NORCAL* wife, the *Warfield* wife was "not trying to take advantage of certain provisions of a contract while avoiding application of other provisions of that same contract. Rather, [she] . . . utilized the services of the residential care facility as provided under certain admissions documents. Those are separate agreements from the arbitration agreement—a different, optional agreement. [She] has not sought to make use of the arbitration agreement and she is not estopped to assert that it is unenforceable against her." (*Id.* at pp. 450–451.)

Seizing on *Warfield*'s statement that the admission documents there were "separate agreements from the arbitration agreement" (*Warfield*, *supra*, 158 Cal.App.4th at p. 450), defendants claim that *Warfield* "reache[d] its conclusion because [the residential care facility] attempted to enforce a stand-alone contract for arbitration" from which the nonsignatory spouse clearly did not benefit. Again, however, we are not persuaded that the fact the arbitration agreement here was part of the residency agreement is

7

significant.  Not only was the arbitration agreement "optional," as was the one in *Warfield*, Harbaugh never attempted to "make use" of it in any way, in contrast to the *NORCAL* wife's actions.  (*Warfield*, at pp. 450–451.)  To conclude that Harbaugh is estopped from challenging the arbitration agreement merely because it was not contained in a separate document would elevate form over substance.

In short, defendants fail to identify any valid theory by which Harbaugh's wife had the authority to consent to arbitration on his behalf.  As a result, the trial court properly denied their motion to compel arbitration.

## III.
### DISPOSITION

The order denying appellants' motion to compel arbitration is affirmed.  Respondents are entitled to their costs on appeal.

_____
Humes, P.J.

WE CONCUR:


_____
Margulies, J.*



_____
Banke, J.

*Retired Justice of the Court of Appeal, First Appellate District.

_Harbaugh et al. v. BKD Arbors of Santa Rosa, LLC, et al._  A168599