Filed 8/29/24  Sandoval v. Parkwest Rehabilitation Center CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THEODORE SANDOVAL,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>PARKWEST REHABILITATION CENTER, LLC,<br><br>    Defendant and Appellant. | B329525<br><br>(Los Angeles County Super. Ct. No. 22STCP04080) |

APPEAL from an order of the Superior Court of Los Angeles County, Melvin D. Sandvig, Judge.  Affirmed.

Lewis Brisbois Bisgaard & Smith, Tracy D. Forbath, Suzanne L. Schmidt, Kathleen M. Walker and Denise A. Isfeld for Defendant and Appellant.

Law Office of Susan Kang Gordon, Susan Y. Kang Gordan; Williams Iagmin and Jon R. Williams for Plaintiff and Respondent.

* * * * * *

When a former nursing home resident sued the home for inadequate care, the nursing home moved to compel arbitration based on an arbitration agreement signed by the resident's sister. A solid wall of precedent establishes that a relative's signature is not enough, without more, to bind the resident. Because the nursing home's belated attempts to navigate below, around, and over that wall all fail, we affirm the trial court's order denying the motion to compel.

## FACTS AND PROCEDURAL BACKGROUND

### I. Facts

#### A. *The initial injury*[1]

As the victim of a robbery gone awry on September 5, 2020, Theodore Sandoval (plaintiff) was shot in the neck and suffered a spinal cord injury that rendered him paralyzed from the chest down. He fell into a coma, but the parties at oral argument conceded that he had regained his mental faculties by early January 2021.

---

[1] This factual summary is necessarily derived from the operative complaint, as the merits have not yet been determined by a factfinder.

In the three months immediately following his injury and while in the care of health care facilities not involved in this appeal, plaintiff developed numerous "stage four" pressure sores on various parts of his body, which later became infected.

**B.** ***Plaintiff's sister signs an arbitration agreement***

On January 7, 2021, plaintiff was admitted to Parkwest Healthcare Center, a skilled nursing facility in Reseda, California that is operated by Parkwest Rehabilitation Center, LLC (Parkwest).

Upon his admission to Parkwest, plaintiff did not himself sign any paperwork. Instead, his sister filled out various items of paperwork, including (1) an "Attestation of Responsible Party," representing that she had "the authority to sign [plaintiff's] Admission Agreement and to make medical decisions" for him; (2) a "California Standard Admission Agreement," identifying herself as "Resident's Representative"; and, most pertinent here, (3) a "Resident-Facility Arbitration Agreement" (the arbitration agreement).[2]

The arbitration agreement subjected to binding arbitration "any dispute as to medical malpractice" or "relat[ing] to the provision of care, treatment and services" to the resident by Parkwest. The arbitration agreement concluded with a certification that the person signing for the resident "affirmatively represents" that she "is duly authorized" to sign the agreement based on the resident's "consent, instruction

---

[2]    Plaintiff's sister also executed a Medi-Cal eligibility notice, a bed hold consent, a mortuary selection form, a consent to photography, and a consent to vaccine; she signed each as either plaintiff's "Representative," his "legal representative," the "Responsible Party," or the "Resident's Agent."

and/or durable power of attorney" to "accept [the agreement's] terms on behalf of the [r]esident," and further "acknowledges" that Parkwest "is relying on" the signer's certification.  Signing the arbitration agreement was not "a condition of [the resident's] admission," and the agreement could be "rescinded" in writing within 30 days.  Neither plaintiff nor his sister rescinded the arbitration agreement.

### C.    *Plaintiff's condition worsens*

While a resident at Parkwest, plaintiff's pre-existing pressure sores became more aggravated, and he also developed new ones.  In January 2022, plaintiff was discharged to his home after a one-year stay at Parkwest.

## II.    Procedural Background

### A.    *Complaint*

In November 2022, plaintiff sued Parkwest and eight other medical facilities and healthcare providers for (1) dependent adult abuse/neglect (Welf. & Inst. Code, § 15600 et seq.) and (2) violation of the Resident's Bill of Rights (Health & Saf. Code, § 1430, subd. (b)).

### B.    *Motion to compel arbitration*

Parkwest filed a motion to compel plaintiff's claims to arbitration, asserting that because plaintiff's sister signed the arbitration agreement as his "representative" during his stay at the nursing facility, the sister was plaintiff's "agent" and he therefore was bound to arbitrate.  The only evidence Parkwest submitted in support of its motion was the attestation and arbitration agreement signed by the sister.

Plaintiff opposed the motion, and submitted a declaration that he had "never" "appointed" his sister as his "legal representative, power of attorney and/or conservator" and he had

4

"never authorized [her] to sign any document on [his] behalf and waive [his] right [to] a jury trial." Plaintiff further declared that he never discussed the arbitration agreement with his sister, and that he first learned of the agreement from his attorney after Parkwest filed its motion.

After further briefing, including Parkwest's submission of the other admission paperwork signed by plaintiff's sister, and a hearing, the trial court denied Parkwest's motion. In support of its ruling, the court cited an unbroken and undisputed line of precedent holding that a family member's signature is not enough, without more, to bind a resident to an arbitration agreement signed by that family member. The court also ruled that Parkwest had otherwise "failed to submit evidence to show that [p]laintiff acted in a way to ostensibly appoint his sister as his agent for purposes of entering the arbitration agreement."

### C. *Appeal*

Parkwest timely appealed.

## DISCUSSION

Parkwest asserts that the trial court erred in denying its motion to compel plaintiff's claims to arbitration. In evaluating the trial court's order, we review de novo any questions of law—such as whether a nonsignatory to an arbitration agreement can be ordered to arbitrate a dispute (*Kinder v. Capistrano Beach Care Center, LLC* (2023) 91 Cal.App.5th 804, 811 (*Kinder*); *DMS Services, LLC v. Superior Court* (2012) 205 Cal.App.4th 1346, 1352 (*DMS*))—as well as the application of that law to undisputed facts, but review for substantial evidence any factual findings made by the trial court (*Gamboa v. Northeast Community Clinic* (2021) 72 Cal.App.5th 158, 166; *Luxor Cabs, Inc. v. Applied Underwriters Captive Risk Assurance Co.* (2018)

5

30 Cal.App.5th 970, 977; *Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236 (*Pinnacle*)).

## I.  Governing Law

### A.  *Motions to compel arbitration*

""""[T]he right to compel arbitration depends upon the existence of a valid agreement to arbitrate between the parties."""" (*Kinder, supra*, 91 Cal.App.5th at p. 811.)  General principles of contract law govern that question.[3]  (*Pinnacle, supra*, 55 Cal.4th at p. 236.)  The party seeking to compel arbitration bears the burden of proving the existence of an arbitration agreement between the parties, and the party opposing the motion bears the burden of establishing a defense to the agreement's enforcement. (*Ibid.*; *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972.)

Because arbitration is a matter of contract, the general rule is that one must be a party to an arbitration agreement to invoke or be bound by its terms.  (*DMS, supra*, 205 Cal.App.4th at p. 1352; *Molecular Analytical Systems v. Ciphergen Biosystems, Inc.* (2010) 186 Cal.App.4th 696, 706; *Westra v. Marcus & Millichap Real Estate Investment Brokerage Co., Inc.* (2005) 129 Cal.App.4th 759, 763.)  Notwithstanding this general rule, a person (and, more specifically, a resident in a health care facility)

---

[3]  While the arbitration agreement here states that it is governed by the Federal Arbitration Act (because Parkwest participates in federal programs like Medicare), interpretation of an arbitration agreement remains governed by state law principles; in the end, applying federal and California law lead to the same analysis because both bodies of law do not favor the arbitration of disputes unless agreed to by the parties.  (*Logan v. Country Oaks Partners, LLC* (2022) 82 Cal.App.5th 365, 370.)

who did not sign an arbitration agreement can be compelled to arbitrate if there is an agency relationship between the patient and the person who signed the agreement. (*Valentine v. Plum Healthcare Group, LLC* (2019) 37 Cal.App.5th 1076, 1085-1086 (*Valentine*).)

**B.** *Agency law*

"There are two types of agency—actual and ostensible. Actual agency is based on *consent*, and turns on whether the principal has the right to control the agent's conduct. [Citations.] Ostensible agency is based on *appearances*, and turns on whether . . . 'the principal intentionally, or by want of ordinary care, causes a third person to believe another to be his agent' even though the third person is not *actually* an agent." (*Pereda v. Atos Jiu Jitsu LLC* (2022) 85 Cal.App.5th 759, 768 (*Pereda*); Civ. Code, §§ 2300, 2317, 2334.) Only ostensible agency is at issue here.

Ostensible agency is established where (1) a party, "when dealing with the agent, did so 'with [a reasonable] belief in the agent's authority,'" (2) "that 'belief [was] generated by some act or neglect by the principal,'" and (3) the party "was not negligent in relying on the agent's apparent authority." (*Pereda*, *supra*, 85 Cal.App.5th at p. 768; *Associated Creditors' Agency v. Davis* (1975) 13 Cal.3d 374, 399.) Because ostensible agency "rests on the notion that the principal should be estopped from creating the false impression of agency" (*Pereda*, at p. 768), the second element is critical (*Valentine*, *supra*, 37 Cal.App.5th at p. 1087 [otherwise, agents would possess "the naked power to bind [their] principal[s] to any contract"]). A finding of ostensible agency accordingly requires evidence of conduct or statements by "'*the principal*'" (*Pereda*, at p. 768); "an agency cannot be created by

7

the conduct of the agent alone" (*Flores v. Evergreen at San Diego, LLC* (2007) 148 Cal.App.4th 581, 587-588 (*Flores*)).  (*Valentine*, at p. 1087 ["Ostensible agency cannot be established by the representations or conduct of the purported agent; the statements or acts of the principal must be such as to cause the belief the agency exists"]; *Kinder*, *supra*, 91 Cal.App.5th at p. 812 ["a defendant cannot meet its burden to prove the signatory acted as the agent of a plaintiff by relying on representations of the purported agent alone"].)

The burden of proving ostensible agency is upon the party asserting that relationship.  (*Rogers v. Roseville SH, LLC* (2022) 75 Cal.App.5th 1065, 1074-1075 (*Rogers*).)

## II.    Analysis

We independently agree with the trial court that Parkwest did not carry its burden of establishing that plaintiff's sister was plaintiff's ostensible agent when signing the arbitration agreement.  For starters, plaintiff's sister's signature on Parkwest's admissions paperwork was not enough, by itself, to render her plaintiff's ostensible agent, as a long and unbroken line of authority so holds.  (*Hearden v. Windsor Redding Care Center, LLC* (June 28, 2024, C098736) ___ Cal.App.5th ___ [2024 Cal.App. LEXIS 466 at *11-14] (*Hearden*); *Kinder*, *supra*, 91 Cal.App.5th at pp. 813-814; *Rogers*, *supra*, 75 Cal.App.5th at pp. 1075-1076; *Garcia v. KND Development 52, LLC* (2020) 58 Cal.App.5th 736, 745; *Valentine*, *supra*, 37 Cal.App.5th at pp. 1087-1090; *Young v. Horizon West, Inc.* (2013) 220 Cal.App.4th 1122, 1132-1133 (*Young*); *Goldman v. Sunbridge Healthcare, LLC* (2013) 220 Cal.App.4th 1160, 1172-1173 (*Goldman*); *Flores*, *supra*, 148 Cal.App.4th at pp. 588-589; *Warfield v. Summerville Senior Living, Inc.* (2007) 158 Cal.App.4th 443, 448 (*Warfield*);

8

*Goliger v. AMS Properties, Inc.* (2004) 123 Cal.App.4th 374, 376-377 (*Goliger*); *Pagarigan v. Libby Care Center, Inc.* (2002) 99 Cal.App.4th 298, 301 (*Pagarigan*); see also *Harrod v. Country Oaks Partners, LLC* (2024) 15 Cal.5th 939, 946-947 [holding appointment of health care agent under California's Health Care Decisions Law does not encompass authority for agent to sign arbitration agreement].)  Further, Parkwest adduced no evidence that *plaintiff* did anything to create the false impression that he had authorized his sister to sign the arbitration agreement on his behalf.

Parkwest offers what boils down to four reasons why plaintiff's sister should nevertheless be viewed as plaintiff's ostensible agent.

First, it argues that the sister signed other admissions documents and attested that she was "duly authorized" to sign the arbitration agreement.  But this precise argument has been rejected by the precedent cited above, largely on the theory that a patient's willingness to allow another to sign paperwork for admission does not translate to a willingness to allow another to sign paperwork forfeiting their right to a jury trial.  (E.g., *Hearden*, *supra*, ___ Cal.App.5th ___ [2024 Cal.App. LEXIS 466 at *13-14]; *Goliger*, *supra*, 123 Cal.App.4th at pp. 376-377; *Flores*, *supra*, 148 Cal.App.4th at p. 590; cf. *County First Nat. Bank v. Coast Dairies & Land Co.* (1941) 46 Cal.App.2d 355, 364-366 [finding ostensible agency when principal affirmed agency and agent had signed off on several prior banking documents without objection from principal]; *Eddy v. American Amusement Co.* (1913) 21 Cal.App. 487, 491-492 [finding ostensible agency in circus employment context].)

9

Second, Parkwest argues that the "custom and practice" in the industry is to accept a relative's signature as binding on the patient, and that this custom and practice is reinforced by various statutes and regulations. But this argument has also been rejected by the precedent cited above (e.g., *Pagarigan*, *supra*, 99 Cal.App.4th at p. 302), and none of the authorities Parkwest cites actually establish that a relative who signs an arbitration agreement is the patient's ostensible agent in the absence of action by the principal/patient. (Cal. Code Regs., tit. 22, § 72527, subd. (c) ["patient's representative" shall have patient's rights explained to them when the "patient lacks the ability to understand" those rights]; *id.*, §§ 72516, 73518 [defining content of admission agreements, and distinguishing arbitration agreements]; Health & Saf. Code, § 1599.65, subd. (a) [obligating healthcare facilities to make "reasonable efforts" to get patient's signature on "admission agreement"].)

Third, Parkwest argues that plaintiff's *neglect* in not investigating what his sister signed and then not repudiating her authority to act on his behalf constitutes "action" that renders the sister his ostensible agent. Although the general definition of ostensible agency contemplates that the principal's "'act or neglect'" might create the false impression necessary for ostensible agency (*Pereda*, *supra*, 85 Cal.App.5th at p. 768), that "neglect" cannot be simply the mere failure to investigate; if it were, a purported agent's conduct by itself would be enough to create ostensible agency if accompanied by an unsubstantiated allegation that the principal should have discovered the agent's conduct after the fact and then objected. Such a rule is no different than a rule that the purported agent's conduct alone is enough to create ostensible agency; as noted above, that is not

10

the law.  (Accord, *Kinder, supra,* 91 Cal.App.5th at p. 816 ["A defendant cannot prove a plaintiff consented to arbitration merely by showing the plaintiff stood idly by while the purported agent signed on his . . . behalf"]; *Warfield, supra,* 158 Cal.App.4th at pp. 448-449 [same]; *Goldman, supra,* 220 Cal.App.4th at p. 1173 [same].)  And even if it were the law, Parkwest offered no evidence either that plaintiff knew or should have known about his sister's signature on the arbitration agreement or that plaintiff did nothing about it.

Fourth and lastly, Parkwest argues that each case in the wall of precedent is factually distinguishable on one or more grounds.  This may or may not be so, but it ignores that that wall stands for the principles outlined above and that Parkwest's motion to compel arbitration is inconsistent with those principles.

For the first time on appeal, Parkwest offers up two new alternative theories for affirmance—namely, that (1) plaintiff *ratified* his sister's signature on the arbitration agreement, and (2) plaintiff should be equitably estopped from denying the binding effect of his sister's signature.  Although Parkwest has waived these arguments by waiting until appeal to spring them, they also lack merit.

Parkwest's ratification argument echoes one of its ostensible agency arguments.  Specifically, Parkwest contends that plaintiff ratified the arbitration agreement by not investigating who signed his admissions paperwork and then not subsequently disavowing his sister's signature.  This contention fails on the proof.  A principal's ratification of his agent's conduct presupposes that the principal was """fully informed""" of that conduct.  (*Hale v. Farmers Ins. Exch.* (1974) 42 Cal.App.3d 681, 692, disapproved on other grounds in *Egan v. Mutual of Omaha*

11

*Ins. Co.* (1979) 24 Cal.3d 803, 822, fn. 5.) Here, however, Parkwest adduced no evidence that plaintiff was aware of his admissions paperwork or the right to rescind the arbitration agreement.

Parkwest's equitable estoppel argument rests on the notion that plaintiff cannot seek to sue in tort and statute on the basis of his admission to Parkwest's facility and, at the same time, deny the existence of the arbitration agreement his sister signed upon his admission. This argument seeks to create a false equivalency: Plaintiff's tort and statutory claims do not rest on the existence of his admission agreement, and, even if they did, California law *mandates* that a patient's agreement to arbitrate be wholly independent of the admission agreement (Health & Saf. Code, § 1599.81, subd. (b)). More broadly, there is no inequity. The law places the risk on persons who deal with agents to "'ascertain[] the scope of [the agent's] powers'" (*Young*, *supra*, 220 Cal.App.4th at p. 1134); thus, any unfairness in the arbitration agreement being unenforceable against plaintiff lies at Parkwest's own doorstep. This is no doubt why courts have rejected equitable estoppel arguments in the context presented in this case. (E.g., *id.* at pp. 1131-1132.)

## DISPOSITION

The order is affirmed. Plaintiff is entitled to costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.

_____, J.
HOFFSTADT

We concur:

_____, Acting P. J.
ASHMANN-GERST

_____, J.
CHAVEZ

13