Filed 2/5/25  Rios de Vitela v. Silverscreen Healthcare CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| JULIA RIOS DE VITELA et al., | |
| Plaintiffs and Respondents, | E081887 |
| v. | (Super.Ct.No. CIVSB2116579) |
| SILVERSCREEN HEALTHCARE, INC. et al., | OPINION |
| Defendants and Appellants. | |

APPEAL from the Superior Court of San Bernardino County.  Wilfred J. Schneider, Jr., Judge.  Affirmed.

Lewis Brisbois Bisgaard & Smith, Lann G. McIntyre, Tracy D. Forbath, Suzanne L. Schmidt, Kathleen M. Walker for Defendants and Appellants.

The Barnes Firm, Allen R. Oghassabian, Christian R. Oliver for Plaintiffs and Respondents.

1

Elvira Bower (Bower); Melody Vitela (Melody)[1]; and Gregorio Vitela (Husband), as an individual and in his capacity as the legal representative and successor in interest of the deceased Julia Rios de Vitela (Resident) sued Silverscreen Healthcare Inc. (Silverscreen) and Diane Machain for (1) elder abuse and neglect (Welf. & Inst. Code, § 15600); (2) violating patient rights (Health & Saf. Code, § 1460, subd. (b)); (3) negligence; and (4) wrongful death. Silverscreen petitioned to compel arbitration. The trial court granted the petition as to Husband's wrongful death cause of action, but denied the petition as to Resident's estate's survival causes of action and Bower's and Melody's wrongful death causes of action.

Silverscreen raises three contentions on appeal. First, Silverscreen contends it proved there was a valid arbitration agreement. Second, Silverscreen asserts that, in the skilled nursing industry, it is customary to have residents' relatives sign admission documents on behalf of residents who are unable to do so themselves. Third, Silverscreen contends the trial court erred by "not resolv[ing] the issue of whether [Resident's] non-signatory heirs . . . were bound to arbitrate their wrongful death claims." We affirm.

---

[1] We use Melody's first name for the sake of clarity. No disrespect is intended.

## FACTS

### A.    COMPLAINT

Resident was born in 1936. Husband is Resident's husband.[2] Bower and Melody (collectively, Children) are Resident's children. Silverscreen does business as Asistencia Villa Rehabilitation and Care Center (the Center), which is a skilled nursing facility. Diane Machain was the Center's administrator.

In February 2020, Resident was recovering from a stroke and was admitted to the Center. Resident suffered from "chronic respiratory failure . . . and was deemed 'cognitively impaired.' She had a tracheostomy tube to aid in her breathing, which made communication difficult for her." In March 2020, visitors were prohibited from entering the Center. On April 29, 2020, Resident tested positive for COVID-19.

On May 2, 2020, Resident was taken to a hospital emergency room due to sepsis. "[Resident] was diagnosed with septic shock, chronic respiratory failure, healthcare associated pneumonia, urinary tract infection, acute kidney injury and hyperkalemia." Resident died the same day.

Husband and Children allege that Silverscreen intentionally understaffed the Center and retained employees without adequate training in order to increase profits. Husband and Children allege that the understaffing caused Resident to suffer substandard care. The complaint is unverified.

---

[2] In the opposition to the petition to compel arbitration, Gregorio Vitela is identified as Resident's son. In the complaint and in a declaration, Gregorio Vitela is identified as Resident's husband. We assume the declaration is correct and that Gregorio Vitela is Resident's husband.

B.    PETITION TO COMPEL ARBITRATION

In petitioning to compel arbitration, Silverscreen asserted that, on March 1, 2020, as part of Resident's admission to the Center, Husband, acting as Resident's representative, signed an agreement to arbitrate all disputes pertaining to whether any medical services at the Center "were improperly, negligently, or incompetently rendered." (Boldface omitted.) Silverscreen asserted the arbitration agreement was binding on all the plaintiffs in the instant case. The only evidence attached to the petition to compel arbitration was a copy of the arbitration agreement signed by Husband.

One paragraph in the arbitration agreement reads: "The Resident and/or Resident's Representative/Agent certifies that he/she has read this Agreement and has been given a copy of this Agreement, and affirmatively represents that he/she is duly authorized, by virtue of the Resident's consent, instruction and/or durable power of attorney, to execute this Agreement and accept its terms on behalf of the Resident. The Resident and/or Resident's Representative/Agent acknowledges that the Facility is relying on the aforementioned certification."

Husband signed the arbitration agreement on the signature line for "Resident Representative/Agent." The signature line for "Resident's Signature" is blank.

C.    OPPOSITION

In opposing the petition to compel arbitration, Husband and Children asserted that Silverscreen failed to provide evidence that (1) Resident was incapable of making decisions and signing the arbitration agreement; (2) there was an express authorization,

4

such as a power of attorney, allowing Husband to sign agreements as Resident's agent; or (3) words and actions on Resident's part that would imply Resident had authorized Husband to sign agreements as Resident's agent. No evidence was included with the opposition.

D.      REPLY

In reply, Silverscreen asserted, "[I]t would seem incumbent upon [Husband and Children] to explain to the Court why [Husband] certified he was [Resident's] agent if he was truly not, and to affirmatively refute the prior certification when he signed the Arbitration Agreement." No evidence was included with the reply.

E.      HEARING

The trial court held a hearing on the petition to compel arbitration. No one testified and no evidence was admitted.

F.      RULING

In its ruling, the trial court wrote: "No evidence is presented that [Husband] held a power of attorney or other express document establishing he was the agent of [Resident] with authority to bind her to contract agreements, including arbitration agreements. No evidence is offered that [Resident] did anything to cause [Silverscreen] or [its] staff to believe [Husband] was authorized by [Resident] to sign the Agreement on her behalf or to act as her agent. Merely because [Husband] signed the Agreement as [Resident's] representative does not make him her agent.

"As [Resident] did not sign the Agreement and no evidence is offered to support that [Husband] was the actual or ostensible agent of [Resident], no contract was formed between [Silverscreen] and [Resident] compelling her survival causes of action to arbitration."

The trial court ruled that Husband had to arbitrate his wrongful death cause of action because the arbitration agreement provided that the person signing as a representative did " 'so not only in their representative capacity for the Resident, but also in their individual capacity.' " Because Husband's wrongful death claim was brought in his individual capacity, he had to arbitrate it—to the extent it was based upon medical malpractice.

## DISCUSSION

### A. EVIDENCE OF A CONTRACT

#### 1. *CONTENTION*

Silverscreen contends the evidence supports a finding that there was a valid arbitration agreement.

#### 2. *STANDARD OF REVIEW*

Silverscreen contends the de novo standard of review should apply because there are no disputed facts. Husband and Children contend the substantial evidence standard of review should apply because the trial court's ruling is based upon findings of fact. "[A]gency is generally a factual question." (*Rogers v. Roseville SH, LLC* (2022) 75 Cal.App.5th 1065, 1072.) However, the only evidence in this case is the arbitration

6

agreement.  Because the only evidence is a document, we will apply the de novo standard of review.  (*Ibid.*)

### 3.    *BURDEN SHIFTING*

There is a burden-shifting procedure involved in petitions to compel arbitration. In the first step of the process, "[t]he petitioner bears the burden of proving the existence of a valid arbitration agreement by the preponderance of the evidence." (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972.)  If the petitioner meets that burden, then, in the second step of the process, the "party opposing the petition bears the burden of proving by a preponderance of the evidence any fact necessary to its defense."  (*Ibid.*)  "In these summary proceedings, the trial court sits as a trier of fact, weighing all the affidavits, declarations, and other documentary evidence, as well as oral testimony received at the court's discretion, to reach a final determination."  (*Ibid.*)

### 4.    *AGENCY*

In some cases, "[t]he party seeking arbitration can meet its . . . burden [simply] by attaching to the petition a copy of the arbitration agreement purporting to bear the [opposing party's] signature."  (*Bannister v. Marinidence Opco, LLC* (2021) 64 Cal.App.5th 541, 543-544.)  However, when an arbitration agreement is signed by a third party, then, as part of its burden of proving the existence of a contract, the petitioning party must provide evidence that the third party was the agent of the principal.  (*Kinder v. Capistrano Beach Care Center, LLC* (2023) 91 Cal.App.5th 804, 815; *Rogers v. Roseville SH, LLC, supra*, 75 Cal.App.5th at p. 1075.)  Such evidence is

7

necessary because two essential elements of a valid agreement are: "1. Parties capable of contracting; [and] [¶] 2. Their consent." (Civ. Code, § 1550.) In order to prove that the third party had the authority to consent on behalf of the principal, agency must be proven.

Agency can be established in three ways. The first method is by express agreement between the agent and the principal. (*Warfield v. Summerville Senior Living, Inc.* (2007) 158 Cal.App.4th 443, 448.) There is no evidence of an express agreement between Resident and Husband. For example, Silverscreen did not provide a copy of a power of attorney executed by Resident giving Husband authority to enter into contracts on her behalf.

The second method for establishing agency is evidence of Resident intentionally making statements or conducting herself in a manner indicating there was an agreement for Husband to act on Resident's behalf. (*Warfield v. Summerville Senior Living, Inc.*, *supra*, 158 Cal.App.4th at p. 448; Civ. Code, § 2300.) Silverscreen did not provide evidence of Resident's actions or statements.

The third method for establishing agency is "by want of ordinary care" (Civ. Code, § 2300), which means neglect by a principal gave the impression of agency (*Pereda v. Atos Jiu Jitsu LLC* (2022) 85 Cal.App.5th 759, 768). Binding a principal to a contract formed by an ostensible agent is a form of estoppel—"that the principal should be estopped from creating the false impression of agency." (*Ibid.*) In order to prove that the principal should be estopped, there must be evidence of (1) the principal's neglect that caused the impression of an agency relationship; and (2) that the other

8

contracting party, i.e., Silverscreen, "was not negligent in relying on the agent's apparent authority." (*Ibid.*) We have no evidence of the circumstances under which the arbitration agreement was signed. There is no evidence of what Resident knew, what Resident was doing, what Husband was doing, what Silverscreen knew, and what Silverscreen observed between Resident and Husband. Due to a lack of evidence, agency by want of ordinary care has not been established.

The only evidence provided by Silverscreen was the arbitration agreement, which sets forth Husband's form assertions about Resident: "Resident's representative . . . affirmatively represents that he/she is duly authorized, by virtue of Resident's consent, instruction and/or durable power of attorney, to execute this Agreement and accept its terms on behalf of the Resident." Husband's assertions do not make him Resident's agent—"[a] person cannot become the agent of another merely by representing [him]self as such." (*Pagarigan v. Libby Care Center, Inc.* (2002) 99 Cal.App.4th 298, 301.)

### 5.    *RATIFICATION*

Silverscreen contends Resident ratified Husband's signing of the arbitration agreement. Husband and Children assert Silverscreen forfeited the ratification argument by failing to raise it in the trial court. We choose to address the issue.

A principal can expressly or impliedly ratify the act of a purported agent after the act occurs. (*Rakestraw v. Rodrigues* (1972) 8 Cal.3d 67, 73.) "An essential element of the legal principle of ratification is knowledge by the principal of the unauthorized act of his agent and of its material circumstances. This is equally necessary whether the

9

ratification be express or implied. And an express ratification without knowledge of all the material circumstances of the transaction is not binding on the principal. Much less will the court imply ratification in the absence of such knowledge, since it is this knowledge which gives rise to the duty of disavowal, and without which there is nothing from which ratification may be implied." (*Johnson v. California Interurban Motor Transp. Assn.* (1938) 24 Cal.App.2d 322, 336-337 (*Johnson*); see also *Chastain v. Belmont* (1954) 43 Cal.2d 45, 58 ["A principal must have knowledge of material facts at the time of the alleged r[a]tification [citation] in order to be held liable for the unauthorized act of another"].) There is no evidence of Resident being aware of the arbitration agreement. Therefore, there is no evidence of Resident ratifying the arbitration agreement.

Silverscreen relies on the following exception to the knowledge element of ratification: "Ordinarily, the law requires that a principal be apprised of all the facts surrounding a transaction before he will be held to have ratified the unauthorized acts of an agent. However, where ignorance of the facts arises from the principal's own failure to investigate and the circumstances are such as to put a reasonable man upon inquiry, he may be held to have ratified despite lack of full knowledge." (*Volandri v. Hlobil* (1959) 170 Cal.App.2d 656, 659.) There is no evidence of Resident's knowledge or lack of knowledge, so one cannot determine whether Resident had knowledge of facts that would put a reasonable person on inquiry.

10

Silverscreen asserts Resident ratified Husband's signature on the arbitration agreement by accepting the benefit of the arbitration agreement. Silverscreen identifies the benefit as lower costs of being a resident at the Center, due to Silverscreen avoiding costs associated with court trials. Ratification cannot occur without either knowledge of the act being ratified or knowledge of facts that would put a reasonable person on notice of the act at issue. (*Johnson*, *supra*, 24 Cal.App.2d at pp. 336-337.) In the instant case, there is no evidence of Resident's knowledge, so one cannot conclude Resident ratified anything.

6.     *MARRIAGE*

Silverscreen asserts that, due to Husband's and Resident's marital relationship, Husband had the authority to bind Resident to the arbitration agreement. Silverscreen's contention is incorrect. Being married does not give one the authority to bind their spouse to an arbitration agreement. (*Goldman v. Sunbridge Healthcare, LLC* (2013) 220 Cal.App.4th 1160, 1171-1172.)

B.     <u>CONTRACTS IN THE SKILLED NURSING SETTING</u>

Silverscreen contends that, in the skilled nursing industry, it is customary to have residents' relatives sign admission documents on behalf of residents who are unable to do so themselves. Silverscreen has provided no evidence of customs and practices in the skilled nursing industry.

Silverscreen points to a regulation regarding the California Health and Human Services Agency's mandatory admission contract for residents at skilled nursing facilities. (Cal. Code Regs., tit. 22, § 72516.) Subdivision (c) of the regulation

11

provides: "No resident or his or her *legal representative* shall be required to sign any other document at the time of, or as a condition of, admission to the licensee's facility." (Cal. Code Regs., tit. 22, § 72516(c), italics added.) Silverscreen notes there is an expectation that a "legal representative" could sign the admission contract. Silverscreen contends that allowing relatives to sign admission documents is necessary in the skilled nursing industry where the residents are often unable to sign documents themselves. We reject Silverscreen's argument.

Health and Safety Code section 1599.65, subdivision (a), provides: "Prior to or at the time of admission, the [health] facility shall make reasonable efforts to communicate the content of the contract to, and obtain on the contract the signature of, the person who is to be admitted to the facility. Unless the prospective resident has been declared legally incompetent or is unable to understand and sign the contract because of his or her medical condition, he or she shall sign or cosign the admission agreement. In the event the patient is unable to sign the contract, the reason shall be documented in the resident's medical record by the admitting physician. This provision does not preclude the facility from obtaining the signature of an agent, responsible party, or a legal representative, if applicable." A "health facility" includes a skilled nursing center. (Health & Saf. Code, §§ 1250, subd. (c)(1), 1599.)

Silverscreen is correct that relatives will, at times, sign admission contracts for residents of skilled nursing facilities, but that does not excuse such facilities from trying to obtain the residents' signatures. (Health and Saf. Code, § 1599.65, subd. (a).) In the instant case, there is no evidence as to what attempts, if any, were made to obtain

Resident's signature on the arbitration agreement. Silverscreen did not provide evidence of (1) its efforts to communicate with Resident and obtain her signature; (2) any documents declaring Resident legally incompetent; and/or (3) a medical record from a doctor documenting Resident's inability to sign contracts. Therefore, Silverscreen has not established an excuse for failing to obtain Resident's signature on the arbitration agreement.

In its ruling, the trial court wrote that the arbitration agreement "states it is subject to the [Federal Arbitration Act (FAA)]. [Citation.] [¶] When an agreement states the FAA governs, it governs." Silverscreen notes that under Health and Safety Code section 1599.65, quoted *ante*, legal representatives are permitted to sign admission contracts for residents of skilled nursing facilities. Silverscreen contends that courts are singling out arbitration agreements for requiring a resident's signature when the FAA prohibits disparate treatment of arbitration agreements.

In this case, the arbitration agreement is not receiving disparate treatment. As discussed *ante*, we looked in the record for the type of evidence described in Health and Safety Code section 1599.65, subdivision (a). We could not find any such evidence. Resident's signature is required on the arbitration agreement because Silverscreen failed to provide any evidence as to why Resident could not sign the arbitration agreement. In sum, we applied the same law in this case as we would to other admission contracts for skilled nursing facilities.

13

D.    WRONGFUL DEATH CLAIMS

1.    *PROCEDURAL HISTORY*

In the trial court's ruling, it wrote, "Generally, if a deceased person executes an agreement to arbitrate medical claims that provide[s] it covers the heirs and successors, then the heirs and successors are bound to arbitrate their wrongful death cause of action. (*Ruiz v. Podolsky* (2010) 50 Cal.4th 838, 841, 854.)  [¶]  . . .   Accordingly, if [Resident] had signed the Agreement or an agent signed the Agreement on her behalf, then [Children] would be bound to arbitrate their wrongful death claim to the extent predicated upon medical malpractice. . . .  [¶]  Of course, none of this matters when the evidence is lacking of [Resident] or her agent signing the Agreement.  Thus, [Children] are not subject to arbitrating their wrongful death cause of action."

2.    *ANALYSIS*

Silverscreen contends the trial court erred by "not resolv[ing] the issue of whether [Resident's] non-signatory heirs, [Children], were bound to arbitrate their wrongful death claims under [Code of Civil Procedure] section 1295 and *Ruiz v. Podolsky* (2010) 50 Cal.4th 838."  Silverscreen is mistaken.  The trial court expressly resolved the issue and cited *Ruiz*.  The trial court explained that Silverscreen failed to prove Husband was Resident's agent, thereby failing to prove a valid arbitration agreement with Resident, which means there was no agreement with Resident that would bind Children.

14

## DISPOSITION

The order is affirmed.  Respondents are awarded their costs on appeal.  (Cal.

Rules of Court, rule 8.278(a)(1).)

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER

J.

We concur:

McKINSTER

Acting P. J.

FIELDS

J.